RECEIVED
AUG 2 2011
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DONNIKA IVY, | § | |
| Plaintiff | § | |
| v. | § | **A11CA660 LY** |
| | § | CIVIL ACTION NO._____ |
| COMMISSIONER ROBERT SCOTT, | § | |
| in his official capacity, as head of the | § | |
| THE TEXAS EDUCATION AGENCY, | § | |
| and ROBERT REYNA, d/b/a ABC | § | |
| DRIVING SCHOOL | § | |
| Defendants | § | |

## ORIGINAL COMPLAINT

Plaintiff Donnika Ivy is a hearing impaired individual who desires to take a driver's education course from a Texas Education Agency ("TEA") licensed school. Ms. Ivy is under age twenty-five and is therefore unable to obtain a driver's license unless she successfully completes a TEA-approved driver's education course. She is unable to obtain employment, because she is unable to drive. Defendant ABC Driving School ("ABC") denied Plaintiff's request for a sign language interpreter, even though the school is licensed by TEA. TEA has refused to provide access for hearing impaired individuals like Ms. Ivy to driver's education programs and a TEA-issued driver's education certificate. TEA refuses to require licensed driver's education programs to accommodate hearing impaired individuals, and has made no other provision to accommodate their disability. As a result, Ms. Ivy has been unable to complete a TEA-approved driver's education course or obtain the TEA-issued certificate she needs to obtain a driver's license.

### STATEMENT OF CLAIM

1. Donnika Ivy brings this action for declaratory and injunctive relief, attorney's fees, costs, and litigation expenses against Defendant Robert Scott in his official capacity as

1

Commissioner and head of TEA for failing to reasonably accommodate her disability in approved driver's education programs, in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12132 *et seq.*; Section 504 of the 1973 Rehabilitation Act ("Rehabilitation Act" or "Section 504"), 29 U.S.C. § 794; and Title V of the Texas Education Code, TEX. EDUC. CODE §§ 1001.001 *et seq.* In addition, Ms. Ivy brings this action for declaratory and injunctive relief, attorney's fees, costs, and litigation expenses against Defendant Robert Reyna, owner and operator of ABC Driving School, for failing to reasonably accommodate her, a person with a disability, in violation of Title III of the ADA, U.S.C. §§ 12181 *et seq.* and Chapter 121 of the Texas Human Resources Code, TEX. HUM. RES. CODE §§ 121.001 *et seq.* ("Chapter 121").

## JURISDICTION AND VENUE

2. Plaintiff brings this action under the ADA, the Rehabilitation Act, and Chapter 121. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 2201. Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a), to consider their state law claims.

3. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) because all or part of the events complained of occurred within Travis County and Defendants are all located in Travis County, Texas.

## PARTIES

4. Defendant Robert Scott is the Commissioner of Education and head of TEA, and is sued in his official capacity. Defendant Scott represents TEA, a state agency charged with, *inter alia,* providing programs and services to individuals who must meet the requirements of a state approved driver's education course for a driver's license or who otherwise want to benefit from

such a course. In this Complaint, "TEA" and "Defendant TEA" refer to Defendant Scott in his official capacity. Defendant Scott may be served with process by serving him at 1701 North Congress Ave, Austin, TX 78701.

5. Defendant Robert Reyna owns and operates ABC Driving School ("ABC"), a privately owned school providing driver's education that is licensed by TEA. Defendant's business is located at 6516 S. 1st St., Austin, Texas 78745, and is a "public accommodation" within the meaning of Title III of the ADA. 42 U.S.C. § 12181(7). Defendant's business is also a "public facility" within the meaning of Chapter 121. TEX.HUM.RES. CODE § 121.003. In this Complaint, "ABC" and "Defendant ABC" refer to Defendant Robert Reyna. Defendant may be served with process at his place of business, at 6516 S. 1st St., Austin, TX 78745.

## STATEMENT OF FACTS

6. Ms. Ivy, twenty-one years old, is completely deaf. She lost her hearing at the age of two and uses American Sign Language (ASL) as her primary means of communication. To communicate by telephone, Ms. Ivy relies on a video phone which connects through an interpreter relay service.

7. Under Texas law, an applicant under the age of twenty-five may not receive a driver's license unless the applicant has completed a TEA-approved driver's education course and presents a certificate of completion of such course issued by TEA. TEX. TRANSP. CODE §§ 521.142(d), 521.1601.

8. In order to meet this requirement, Ms. Ivy called driving schools in Austin in May of 2010, using her video phone, and requested an interpreter for the course. The schools, including Defendant ABC, refused to provide her with an interpreter. In May of 2011, Ms. Ivy tried again to find a driving school that would provide a sign language interpreter. She called Defendant

ABC with her video phone in approximately May of 2011. She inquired into Defendant ABC's driving courses and requested an interpreter.

9. ABC responded to Ms. Ivy's request by telling her that they would not provide an interpreter.

10. Ms. Ivy then called another driving school (Austin Driving School, located at 3100 W. Slaughter Lane), and was again denied her request for an interpreter, thereby exhibiting that this was the pattern of practice of driving schools licensed by the state (*see also* ¶¶ 15-16 *infra*).

11. Ms. Ivy is currently unemployed and desires to obtain employment. However she has been unable to do so, primarily because she does not have a driver's license. She was also enrolled in classes at Austin Community College, but was forced to stop attending due to lack of transportation. By denying her request for an interpreter, Defendant ABC made it impossible for Ms. Ivy to obtain employment or to continue her college education. Ms. Ivy's inability to obtain a driver's license has severely limited her options, halted her ability to pursue her goals, and has fundamentally altered the way in which she must live her life.

12. As even Defendant TEA admits (*see infra*, ¶ 18), the ADA applies to the ABC Driving School and it is required to make reasonable accommodations for people with disabilities. Providing an interpreter is a reasonable accommodation that would not unduly burden ABC Driving School. However, it refused to provide Ms. Ivy with an interpreter so that she could learn to drive.

13. Ms. Ivy has been unable to take a driver's education course from a TEA-licensed school to this date because no school would provide her an interpreter, and because TEA will not ensure that schools accommodate her disability. Like many deaf individuals, Ms. Ivy is not

proficient enough in written English to master an online course. Solely because of this disability discrimination, Ms. Ivy has been unable to apply for a Texas driver's license.

14. Providing driver's education courses with the aid of interpreters for the hearing impaired like Ms. Ivy is a reasonable accommodation that would not fundamentally alter the nature of the programs and services offered by Defendant TEA through its licensing and regulation of driver's education schools. The licensing and regulatory function of TEA provides the public with access to approved driver's education courses and the driver's education certificate issued by TEA. TEX. TRANSP. CODE § 521.1601 and Chapter 1001 of the Texas Education Code. TEA is given the authority and duty to establish driver's education programs (TEX. EDUC. CODE § 1001.053), set minimum standards (*id.*), establish the curriculum (TEX. EDUC. CODE § 1001.101), designate materials (TEX. EDUC. CODE § 1001.1015), control the issuance of a uniform certificate of completion (TEX. EDUC. CODE § 1001.056), coordinate curriculum development with other state agencies, including the Texas Department of Public Safety (TEX. EDUC. CODE §§ 1001.107, 1001.110), Texas Rehabilitation Commission (Tex. Educ. Code § 1001.104), Texas Department of Insurance (TEX. EDUC. CODE § 1001.105), and Texas Department of Health (TEX. EDUC. CODE § 1001.108), license driver's education schools (TEX. EDUC. CODE § 1001.201-214), license instructors (TEX. EDUC. CODE § 1001.251-257), as well as resolving complaints against the schools and monitoring the schools for compliance (TEX. EDUC. CODE §§ 1001.053(4), 1001.153, 1001.206).   Providing access to deaf individuals by reasonably accommodating their request for interpreters would not cause Defendants TEA or ABC an undue burden.

15. In 2010 Ms. Ivy contacted Heather Bise, a deaf resource specialist who works for Deaf Action Center. Around the same time that Ms. Ivy called her to complain in May of 2010,

5

Ms. Bise started receiving and investigating complaints from other deaf clients regarding their inability to access the driver's education courses, obtain their certificate, and obtain their driver's licenses. This is because in March of 2010 a new law went into effect which required everyone under the age of twenty-five applying for their first license was required to take a driver's education course and present a TEA-issued driver's education certificate in order to get a license. TEX. TRANSP. CODE §§ 521.142(d), 521.1601. Driver's education schools across the state failed to provide interpreters for the hearing impaired.

16. In September of 2010, Ms. Bise complained to TEA regarding the driving schools' refusal to provide a sign language interpreter to hearing impaired students, and the resultant complete obstacle to the hearing impaired in accessing a TEA issued driver's education certificate and a Texas driver's license. Ms. Bise noted that, on average, deaf individuals read and write from a third to fifth-grade level, due to the fact that written English is based on auditory language, and that ASL interpreters are most appropriate in educational settings.

17. Rather than fix the problem, TEA directed Ms. Bise to the U.S. Department of Justice (DOJ). In doing so, TEA ignored its overall responsibility, and narrowed the inquiry to whether it should be ordered to enforce compliance if the DOJ (or presumably a court of competent authority) found a violation by a particular driving school.

18. TEA did, however, admit that the driving schools were covered by the ADA and as such were required to reasonably accommodate people with disabilities. TEA also cited their requirement to comply with state and federal law in order to obtain a license under TEX. EDUC. CODE § 1001.206(7). It acknowledged that it could exercise its enforcement authority to compel a school to come into compliance, but refused to do so until a separate determination had been made.

19. Ms. Bise filed a complaint on behalf of Ms. Ivy and her other clients with the DOJ against TEA for its failure to ensure access by people with hearing impairments to driver's education and driver's education certificates. The DOJ referred the matter to the Office of Civil Rights of the Department of Education ("OCR"). OCR acknowledged jurisdiction over TEA as a recipient of federal funds under Section 504 and as a covered entity for purposes of Title II of the ADA, but it also adopted TEA's framing of the issue – reviewing only whether TEA had an obligation to enforce the ADA with the individual driving schools. OCR did not consider TEA's affirmative obligation to make provisions for accommodation and access for individuals with hearing impairments.

20. OCR therefore did not analyze the issue of the affirmative obligation of TEA to make driver's education and the driver's certificate accessible to people with hearing disabilities on an equal basis as part of its programs and services to the public, and it did not make a determination on this obligation.

21. Under Chapter 1001 of the Texas Education Code, TEA has a statutory obligation to provide Texans access to state-approved driver's education. TEX. TRANSP. CODE § 521.1601 and Chapter 1001 of the Texas Education Code. If it were not for TEA's approval and licensure of driver's education course providers, Texans would not have access to state-approved driver's education, and as a result, Texans under the age of twenty-five would not have access to driver's licenses. TEX. TRANSP. CODE §§ 521.142(d), 521.1601. Under the ADA and the Rehabilitation Act, as the provider of these programs and services, TEA may not adopt policies that have the effect of denying access to these programs and services by Texans on the basis of disability. 42 U.S.C. § 12132; 29 U.S.C. § 794(a).

22. In spite of the requests of Ms. Ivy and Ms. Bise, TEA has refused to fulfill its own obligation under the ADA or the Rehabilitation Act to make reasonable accommodations for people with disabilities in the programs and services it offers by making suitable provision of driver's education to people with hearing disabilities. Every year, Defendant TEA provides and ensures access to thousands of Texans to learn how to drive and obtain the driver's education certificate necessary for their license, but fails to provide the same crucial service to people who have hearing impairments.

23. TEA has admitted that the ADA applies to the driver's education schools which it licenses, and that they are required to make reasonable accommodations for people with disabilities. The requirement of a driver's education course for those under 25 seeking their first license, coupled with the legislative mandate given to TEA to make suitable provision for driver's education schools and courses in Chapter 1001 of the Texas Education Code (*see* ¶¶ 13-16 *supra*) make clear that TEA has a statutory responsibility to provide access to driver's education. However, it has abdicated its own responsibility under the law by attempting to delegate its obligations under the ADA and Section 504. An entity may not delegate liability under the ADA. 28 C.F.R. § 35.130(b)(3)(i).

24. Ms. Ivy seeks access to the driver's education course required by law and the driver's education certificate issued by TEA. By failing to reasonably accommodate the disability of Ms. Ivy and others like her through policies and procedures consistent with the law, TEA is denying Ms. Ivy a TEA issued driver's education certificate and the opportunity to obtain a driver's license. Ms. Ivy seeks to enjoin the Defendant Scott in his official capacity to make the necessary changes in TEA's policies and procedures to ensure that access.

25. ABC has violated Ms. Ivy's rights under the ADA by failing to provide a reasonable accommodation of her disability. Ms. Ivy seeks to enjoin the ABC Defendant to ensure that they provide upon request qualified sign language interpreters for hearing impaired individuals as a reasonable accommodation.

26. Both TEA and ABC have violated Ms. Ivy's rights by refusing to accommodate her disability with interpreters and other auxiliary aids and provide driver's education so that she can learn to drive like Texans who are not deaf.

## CAUSES OF ACTION

<u>Violations of Title II of the ADA by Defendant Robert Scott in his official capacity</u>

27. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

28. As an agency of the State government, TEA is a "public entity" for the purposes of Title II of the ADA. 42 U.S.C. § 12131(1)(b).

29. Pursuant to the Code of Federal Regulations, "[a] public entity shall take appropriate steps to ensure that communications with . . . members of the public with disabilities *are as effective as communication with others.*" 28 C.F.R § 35.160(a) (emphasis added). Additionally, "[a] public entity shall furnish appropriate auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of, a service ... conducted by a public entity." 28 C.F.R. § 35.160(b)(1).

30. TEA provides Texans with access to qualified driver's education courses and driver's education certificates. TEX. EDUC. CODE §§ 1001.053, 1001.055-6, 1001.101, 1001.1015,

1001.104-110, 1001.153, 1001.201-214, 1001.251-257 (*see supra*, ¶ 14). Under Title II, TEA has an affirmative duty to provide access to individuals with hearing disabilities to its programs and services. *See* 28 C.F.R. § 35.160(b)(1). Furthermore, Title V of the Texas Education Code emphasizes TEA's affirmative duty to ensure the compliance of driver's education course providers with applicable federal laws such as the ADA and the Rehabilitation Act: as a requirement for licensure, TEA must confirm "on investigation" that "the course provider complies with all county, municipal, state, and federal laws." TEX. EDUC. CODE § 1001.206(7).

31. TEA has been made aware of the discriminatory practices by Defendant ABC and other driving schools against individuals with hearing disabilities via Ms. Bise's advocacy on behalf of Ms. Ivy and others like her. However, TEA refuses to provide access to individuals with hearing disabilities in their system of licensing and regulating driver's education schools. TEA has therefore failed in its affirmative duty.

32. Furthermore, TEA may not delegate this affirmative duty to third parties. "A public entity may not, directly *or through contractual or other arrangements*, utilize criteria or methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(3)(i) (emphasis added).

33. TEA has failed to make driver's education courses and driver's education certificates available to individuals with hearing disabilities on an equal basis with those who are hearing, in violation of 42 U.S.C. § 12132. TEA has in its provision of driver's education courses and driver's education certificates utilized criteria or methods of administration that have the effect of subjecting individuals with hearing disabilities to discrimination on the basis of their disability, prohibiting Ms. Ivy and others from obtaining the prerequisites for a driver's license, in violation of 28 C.F.R. § 35.130(b)(3)(i).

Violations of Section 504 by Defendant Robert Scott in his official capacity (TEA)

34. Ms. Ivy similarly alleges a cause of action under the Rehabilitation Act, because Defendant TEA (Robert Scott in his official capacity) discriminated against her on account of her disability by refusing to make suitable provision for access to driver's education courses, and by failing to require driving schools to accommodate people with hearing disabilities as required by law.

35. The Rehabilitation Act states, "No [person] shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving federal funding assistance." 29 U.S.C. § 794(a).

36. Defendant TEA is a recipient of federal funding assistance. Ms. Ivy requested reasonable accommodation for her disability from Defendant ABC, but was refused. TEA also refused to change its policies and procedures after having been made aware of these deficiencies. Ms Ivy has therefore been excluded from participation in the driver's education system established by TEA's licensing policies because of its failures and omissions. She was denied the benefits there from by TEA's refusal to ensure a system that would accommodate her hearing disability. TEA is therefore in violation of the Rehabilitation Act. This violation subjects Ms. Ivy to discrimination on the basis of her disability.

Violations of Title III of the ADA by Defendant Robert Reyna, d/b/a ABC Driving School

37. Defendant Robert Reyna, d/b/a ABC Driving School ("Defendant ABC"), denied Plaintiff full and equal enjoyment of its facilities and services by its staff's refusal to effectively accommodate Plaintiff's disabilities in violation of Title III of the ADA by failing to provide an interpreter.

38. Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a).

39. ABC is a "service establishment" and "place of education" and as such, is a "place of public accommodation" under the ADA. 42 U.S.C.A. § 12181(7)(f), (j).

40. Title III requires Defendant ABC to "make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to individuals with disabilities." 42 U.S.C. § 12182(b)(2)(A)(iii). Defendant ABC violated Title III by failing to produce and implement a policy for accommodating customers with hearing impairments.

41. Title III requires Defendant ABC to "take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 42 U.S.C. § 12182(b)(2)(A)(iii).

42. By refusing to provide Plaintiff with an interpreter or other effective auxiliary aid so that she could participate effectively in a driver's education course, Defendant ABC treated Plaintiffs differently than other individuals in violation of Title III.

<u>Violations of Chapter 121 by Defendant Robert Reyna, d/b/a ABC Driving School</u>

43. Chapter 121 states that persons with disabilities have the same right as the able-bodied to the full use of any public facility in Texas, which includes access to Defendant ABC's driver's education courses. TEX. HUM. RES. CODE ANN. §§ 121.002(5), 121.003(a).

44. Defendant ABC's refusal to make its courses equally accessible has denied, and continues to deny, Plaintiff and others similarly situated, due to their disabilities, the same rights that persons without those disabilities have to the full use and enjoyment of that public

accommodation, in violation of Chapter 121. TEX. HUM. RES. CODE ANN. §§ 121.003(a), (d)(2), and (d)(3).

45. By refusing to provide courses that are equally accessible to the hearing impaired, Defendant ABC has discriminated, and continues to discriminate, against Plaintiff and others similarly situated, due to their disabilities.

46. Defendant ABC has the legal duty to make reasonable accommodations in its policies, practices, and procedures to ensure that Plaintiff, and those similarly situated are not discriminated against. TEX. HUM. RES. CODE ANN. § 121.003(d)(2). By failing to make any reasonable accommodations in providing Plaintiff equal access to its driver's education course, Defendant ABC has violated, and continues to violate, Chapter 121.

47. Defendant ABC has the legal duty to provide auxiliary aids and services necessary to allow the full use and enjoyment of the public facility. TEX. HUM. RES. CODE ANN. § 121.003(d)(3). By refusing to provide effective auxiliary aids and services to allow access by Plaintiff to its driver's education course, Defendant ABC has violated and continues to violate Chapter 121.

48. A person or entity who violates Chapter 121 is deemed to have deprived a person with a disability of his or her civil liberties. TEX. HUM. RES. CODE ANN. § 121.004(b). There is a conclusive presumption of damages in the amount of at least $100 for each violation of the law, for which Defendant ABC is liable to Plaintiff as a result of the allegations herein. *Id.* There is no maximum penalty.

**RELIEF REQUESTED**

<u>Injunctive Relief</u>

49. Plaintiff will continue to experience unlawful discrimination as a result of Defendants' refusal to comply with the ADA, the Rehabilitation Act, and Chapter 121. Injunctive relief is necessary so that Ms. Ivy and other individuals with disabilities can enjoy equal access to the driver's education certificates provided by TEA and the services provided by licensed driving schools as required by law, and to require Defendants to develop and follow procedures and policies for accommodating citizens who are hearing impaired, including Plaintiff.

50. Injunctive relief should further include, but not be limited to, a permanent injunction requiring Defendant TEA, its agents, employees, and all persons acting in concert with Defendant TEA to require—as a condition to granting licenses to driving schools—that driving schools provide, individually or through some joint program, reasonable accommodation in the form of interpreters or other effective aids to participation to hearing impaired individuals desiring to enroll in driving courses.

51. Injunctive relief should include, but not be limited to, a permanent injunction requiring Defendant ABC, its agents, employees, and all persons acting in concert with Defendant ABC to provide an interpreter or other effective aids to participation to hearing impaired clients wishing to enroll in driver's education courses.

Declaratory Relief

52. Plaintiff is entitled to declaratory judgment concerning each of Defendants' violations of law, specifying the rights of individuals with disabilities to access the services available at TEA licensed driving schools and TEA-issued driving certificates.

Attorney's Fees and Costs

53. Plaintiffs are entitled to reasonable attorney's fees, litigation costs, and court costs pursuant to the ADA, 42 U.S.C. §§ 12188 and 2000a-3, and the Texas Declaratory Judgments Act, TEX.CIV.PRAC. AND REM. CODE § 37.009.

## PRAYER FOR RELIEF

THEREFORE, Plaintiff respectfully requests that this Court:

A. Issue a permanent injunction, requiring Defendants, their agents, servants, and employees, and all persons acting in concert with Defendants, to cease all discrimination and eliminate all barriers to accessibility that prevent Plaintiff, and all others similarly situated, from having access to the driver's education certificates provided by TEA and to the services provided by TEA licensed driving schools. In particular, Plaintiffs request a permanent injunction to require TEA to establish effective policies and programs of access for the hearing impaired through qualified interpreters and other aids as appropriate, to require licensed driving schools to participate in this program and service, and to require TEA to enforce said requirement as a condition of licensure. Plaintiff requests a permanent injunction to require ABC Driving School to reasonably accommodate people with hearing disabilities by providing interpreters or other effective auxiliary aids and services to people with hearing disabilities. Plaintiff also requests a permanent injunction enjoining Defendants from further violations of the ADA, the Rehabilitation Act, and Chapter 121, by discriminating against her in violation of federal and state law;

B. Enter declaratory judgment that Defendants' discrimination in the past has prevented and continues to prevent Plaintiff, and those similarly situated, from fully accessing the programs and services provided by TEA and TEA licensed driving schools, in violation of the ADA, the Rehabilitation Act, and Chapter 121;

C. Find that Plaintiff is the prevailing party in this action, and order Defendants to pay her attorney's fees, costs, and litigation expenses;

D. Award Plaintiff actual and/or statutory damages in the amount of at least $100 for each violation of Chapter 121 of the Texas Human Resources Code; and,

E. Grant such other and additional relief to which Plaintiff may be entitled.

Dated: August 2, 2011.

Respectfully submitted,

_____
Joseph P. Berra

Joseph P. Berra  
State Bar No. 24027144  
James C. Harrington  
Texas Bar No. 09048500  
Wayne Krause  
State Bar No. 24032644  

TEXAS CIVIL RIGHTS PROJECT  
1405 Montopolis Drive  
Austin, Texas 78741-3438  
   (512) 474-5073 (phone)  
   (512) 474-0726 (fax)  

ATTORNEYS FOR PLAINTIFFS