UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DONNIKA IVY, | § | |
|                Plaintiff | § | |
| v. | § | |
| | § | |
| COMMISSIONER ROBERT SCOTT, | § | CIVIL ACTION NO. A-11-CA-660 LY |
| in his official capacity, as head of the | § | |
| THE TEXAS EDUCATION AGENCY, | § | |
| and ROBERT REYNA, d/b/a ABC | § | |
| DRIVING SCHOOL | § | |
|                Defendants | § | |

**FIRST AMENDED COMPLAINT**

Plaintiff Donnika Ivy is a hearing-impaired individual, who desires to take a driver education course from a school licensed by the Texas Education Agency (TEA) in order to obtain her driver license. Because Ms. Ivy is under age twenty-five, she cannot obtain a license unless she successfully completes a TEA-approved driver education course. She is unable to obtain employment because she is unable to drive.

Defendant ABC Driving School (ABC) denied Plaintiff's request for a sign language interpreter. Even though the school is licensed by TEA. TEA has refused to provide accommodation for hearing-impaired individuals like Ms. Ivy in its driver education program or require licensed driver education schools to accommodate hearing-impaired individuals. As a result, Ms. Ivy has been unable to complete a TEA-approved driver education course and obtain the TEA-issued certificate she needs to obtain a license.

STATEMENT OF CLAIM

1. Ms. Ivy brings this action for declaratory and injunctive relief, attorney's fees, costs and litigation expenses against Defendant Robert Scott, in his official capacity as Commissioner and head of TEA, for failing to reasonably accommodate her disability in TEA-licensed driver education programs, in violation of Title II of the Americans with Disabilities Act (ADA), 42

U.S.C. §§12132 *et seq.*, Section 504 of the 1973 Rehabilitation Act (Rehabilitation Act or Section 504), 29 U.S.C. §794; and Title V of the Texas Education Code, TEX.EDUC. CODE §§1001.001 *et seq.* In addition, Ms. Ivy seeks declaratory and injunctive relief, attorney's fees, costs, damages, and litigation expenses against Defendant Robert Reyna, owner and operator of ABC, for failing to reasonably accommodate her, in violation of Title III of the ADA, U.S.C. §§12181 *et seq.,* and Chapter 121 of the Texas Human Resources Code, TEX.HUM.RES. CODE §§121.001 *et seq.* (Chapter 121).

## JURISDICTION AND VENUE

2.  This Court has jurisdiction under 28 U.S.C. §§1331 and 2201. Plaintiff further invokes the Court's supplemental jurisdiction, pursuant to 28 U.S.C. §1367(a), to consider her state law claims.

3.  Venue is proper in this Court, pursuant to 28 U.S.C. §1391(b), because the events complained of occurred within Travis County and Defendants are all located in Travis County.

## PARTIES

4.  Ms. Ivy is completely deaf. Her hearing disability substantially limits one or more of her major life activities. She communicates primarily through American Sign Language (ASL). Ms. Lauderdale is an individual with a "handicap," as defined by the Rehabilitation Act, a qualified "person with a disability," as defined by the ADA, and a "person with a disability," as defined by Chapter 121.

5.  Defendant Robert Scott, as the Commissioner of Education and head of TEA, is sued in his official capacity. He represents TEA, a state agency charged with, *inter alia,* providing programs and services to individuals who must meet the requirements of a state-approved driver

education course to obtain a driver license or who otherwise want to benefit from such a course. In this Complaint, "TEA" refers to Scott in his official capacity.

6. Defendant Robert Reyna owns and operates ABC Driving School, a privately-owned driver education school providing that is licensed by TEA. Defendant's business is located at 6516 S. 1st St., Austin, Texas 78745, and is a "public accommodation" within the meaning of Title III of the ADA. 42 U.S.C. §12181(7). Defendant's business is also a "public facility" within the meaning of Chapter 121. TEX.HUM.RES. CODE §121.003. In this Complaint, "ABC" refers to Defendant Reyna.

## STATEMENT OF FACTS

7. Ms. Ivy, twenty-one years old, lost her hearing at the age of two and uses ASL as her primary means of communication. To communicate by telephone, she relies on a video phone, which connects through an interpreter relay service. Ms. Ivy's first and native language is American Sign Language. English is a foreign language to her. She learned written English as a second language. She has limited proficiency in written English.

8. Under Texas law, an applicant under age twenty-five, may not obtain a driver license unless the applicant has completed a TEA-approved driver education course and presents a certificate of completion of such course issued by TEA. TEX.TRANSP. CODE §§521.142(d), 521.1601. The only way to fulfill the driver education course is through a TEA-certified school or program.

9. In order to meet this requirement, Ms. Ivy called driving schools in Austin in May 2010, using her video phone, and requested an interpreter for the course. The schools, including Defendant ABC, all refused to provide an interpreter. In May 2011, Ms. Ivy tried again to find a

driving school that would provide an ASL interpreter. She called Defendant ABC with her video phone in May 2011. She inquired into ABC's driving courses and requested an interpreter.

10. ABC responded that it would not provide an interpreter.

11. Ms. Ivy is currently unemployed and desires to work. However, she has been unable to do so, primarily because she does not have a driver license. She was also enrolled in classes at Austin Community College, but was forced to stop attending due to lack of transportation. By denying her request for an interpreter, ABC made it impossible for Ms. Ivy to obtain employment or to continue her college education. Ms. Ivy's inability to obtain a driver license has severely limited her options, halted her ability to pursue her goals, and has fundamentally altered the way in which she must live her life.

12. As Defendant TEA admits (*see infra,* ¶22), the ADA applies to the ABC Driving School and it is required to make reasonable accommodations for people with disabilities. Providing an interpreter is a reasonable accommodation that would not unduly burden ABC. However, it refused to provide Ms. Ivy with an interpreter so she could learn to drive.

13. Similarly, by refusing to make suitable provision for reasonable accommodations in its driver education program, TEA has made it impossible for Ms. Ivy to obtain employment or to continue her college education.

14. TEA requires the owners of prospective driving schools to sign an affidavit in their initial application for a license, stating: "Prospective students will not be denied admission on the basis of race, religion, color, national origin, sex, handicap, or age…." *See* Exhibit 1, Driver Education School License Application, p.4.  However, the provision is meaningless because TEA refuses to enforce it.

15. Ms. Ivy has been unable to take a driver education course from a TEA-licensed school to this date because no school would provide an interpreter and because TEA will not accommodate her disability in its programs and services, refusing to make driver education courses accessible to people with hearing disabilities, and will not ensure that schools accommodate her disability. Like many deaf individuals, Ms. Ivy is not proficient enough in written English to master an online course. Solely because of this disability discrimination, Ms. Ivy has been unable to apply for a Texas license.

16. Providing driver education courses with the aid of interpreters for the hearing impaired like Ms. Ivy is a reasonable accommodation that would not fundamentally alter the nature of the programs and services offered by TEA through its control and authority over driver education courses and schools. TEA has statutory authority over approved driver education courses and the driver education certificate it issue. *See* TEX. TRANSP. CODE §521.1601 *in conjunction with* Chapter 1001 of the Texas Education Code. TEA is given the authority and has an obligation to do the following with regard to driver education:

1. set minimum standards (TEX.EDUC. CODE §1001.053);
2. *establish* the curriculum (*Id.* §1001.101);
3. designate materials (*Id.* §1001.1015);
4. control the issuance of a uniform certificate of completion (*Id.* §1001.056);
5. coordinate curriculum development with other state agencies, including the Texas Department of Public Safety (*Id.* §§1001.107, 1001.110), Texas Rehabilitation Commission (*Id.* §1001.104), Texas Department of Insurance (*Id.* §1001.105), and Texas Department of Health (*Id.* §1001.108);
6. license driver education schools (*Id.* §1001.201-214);
7. license instructors (*Id.* §1001.251-257);
8. resolve complaints against the schools and monitoring the schools for compliance (*Id.* §§1001.053(4), 1001.153, 1001.206);

9. determine and ensuring compliance of the school "with all county, municipal, state, and federal regulations" (*Id.* §1001.204(7)); and ultimately *exercise jurisdiction and control over driver training schools* (*Id.* §1001.051) (emphasis added).

17. Making suitable provision in driver education programs to reasonably accommodate people with hearing disabilities is within the mandatory authority of TEA and would not cause Defendants TEA or ABC an undue burden.[1]

18. TEA already requires the aforementioned affidavit from driving school owners, agreeing not to discriminate on the basis of disability, but refuses to enforce it. Exhibit 1, p.4 incision G. Refusal to accommodate or ensure accommodation of people with hearing disabilities is a violation of TEA's obligation and an abdication of its statutory mandate.

19. In 2010, Ms. Ivy contacted Heather Bise, who is a contract Deafness Resource Specialist with the Texas Department of Assistive and Rehabilitative Services. Around the same time that Ms. Ivy called her in May 2010 to complain, Ms. Bise was receiving and investigating complaints from other deaf persons regarding their inability to access driver education courses, obtain their certificate, and get their driver licenses. This is because, in March 2010, a new law went into effect, which required everyone under age twenty-five, applying for their first license, to take a TEA-approved driver education course and present a TEA-issued driver education certificate in order to get a license. TEX.TRANSP. CODE §§521.142(d), 521.1601. Driver education schools across the state were systematically refusing to provide interpreters for hearing-impaired people.

20. In September 2010, Ms. Bise complained to TEA regarding the driving schools' refusal to provide sign language interpreters and the complete obstacle this creates for hearing-

---

[1] TEA has issued 51 pages of regulations implementing Chapter 1001 of the Texas Education Code and exercising its control over the field of driver education (*see* 19 TAC §§176.1001-1020, available at http://ritter.tea.state.tx.us/rules/tac/chapter176/ch176aa.html). TEA certainly has authority to make suitable provision for reasonable accommodation of the hearing disabled.

impaired people. Exhibit 2, Email from Ms. Bise and TEA Receipt of Correspondence with TEA Tracking No. 2010-09-029. Ms. Bise noted that, on average, deaf individuals read and write from a third to fifth-grade level, because written English is based on auditory language, and that ASL interpreters are most appropriate in educational settings. *Id.*

21. Rather than fix the problem, TEA directed Ms. Bise to the U.S. Department of Justice (DOJ). Exhibit 3, Letter from Victor Alegria, Director Driver Training Division of TEA. In doing so, TEA shirked its responsibility to reasonably accommodate hearing-impaired individuals in the exercise of its statutory authority to develop and provide access to driver education programs. TEA takes the position that it only has to enforce compliance, if DOJ (or presumably a court of competent authority) found a violation by a particular driving school. There is no such statutory exemption for TEA. *Id.*

22. TEA agrees that the ADA covers driving schools and they must reasonably accommodate people with disabilities. *Id.* TEA also agrees that it could exercise its enforcement authority to compel a school to come into compliance, but refuses to do so until a separate determination has been made by another competent authority. *Id.* This is contrary to the plain meaning of applicable Texas laws.

23. Thus TEA has refused to exercise its obligation to monitor schools for compliance with state and federal law. This is in addition to TEA's own refusal to make suitable provision for reasonable accommodations in its driver education program despite having the affirmative obligation to do so under Section 504 and the ADA.

24. By refusing to comply with and enforce the law, TEA allows driver education schools throughout the state to refuse to accommodate people with hearing disabilities.

25. Ms. Bise filed a complaint on behalf of Ms. Ivy others with the DOJ against. DOJ referred the matter to the Office of Civil Rights of the Department of Education (OCR). OCR acknowledged jurisdiction over TEA, as a recipient of federal funds under Section 504 and as a covered entity for purposes of Title II of the ADA, but adopted TEA's framing of the issue – reviewing only whether TEA had an obligation to enforce the ADA with the individual driving schools. OCR did not consider TEA's affirmative obligation to make provisions for accommodation and access for people with hearing impairments.

26. OCR did not analyze TEA's affirmative obligation to make driver education programs and the driver certificate accessible to people with hearing disabilities on an equal basis. OCR did not make a determination on this obligation.

27. As noted, TEA has a statutory obligation to provide Texans access to state-approved driver education. If it were not for TEA's development of a driver education program, including the approval, licensure, and monitoring of driver education course providers, Texans would not have access to state-approved driver education; and as a result, Texans under the age of twenty-five would not be able to get driver licenses. TEX.TRANSP. CODE §§521.142(d), 521.1601. Under the ADA and the Rehabilitation Act, TEA, as the provider of these programs and services, may not adopt policies that have the effect of denying access to these programs and services by Texans on the basis of disability.

28. In spite of the requests of Ms. Ivy and Ms. Bise, TEA has refused to fulfill its legal obligation to make reasonable accommodations for people with hearing disabilities in its driver education programs. Every year, TEA provides access to thousands of Texans to approved courses which enable them to learn to drive and obtain the driver certificate necessary for their license, but TEA fails to provide the same crucial service to people with hearing impairments.

29. The driver education requirement for those under 25, coupled with the legislative mandate to TEA to govern driver education programs in the state (*see* ¶¶16-18 *supra*) make clear that TEA is statutorily mandated to provide accessible driver education. However, TEA has refused to comply with the law by attempting to delegate its obligations under the ADA and Section 504, which it may not do. 28 C.F.R. §35.130(b)(3)(i).

## CAUSES OF ACTION

### 1. Violations of Title II of the ADA by Defendant Robert Scott in His Official Capacity

30. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132.

31. As a government agency, TEA is a "public entity" for the purposes of Title II of the ADA. *Id.* §12131(1)(b).

32. Under the Code of Federal Regulations, "[a] public entity shall take appropriate steps to ensure that communications with ... members of the public with disabilities *are as effective as communication with others*." 28 C.F.R §35.160(a) (emphasis added). Additionally, "[a] public entity shall furnish appropriate auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of, a service ... conducted by a public entity." *Id.* §35.160(b)(1).

33. TEA provides Texans with access to qualified driver education courses and driver education certificates through its driver education program. TEX.EDUC. CODE §§1001.053, 1001.055-6, 1001.101, 1001.1015, 1001.104-110, 1001.153, 1001.201-214, 1001.251-257 (*see supra,* ¶ 16). Under Title II, TEA has an affirmative duty to provide access to individuals with

hearing disabilities to its programs and services. *See* 28 C.F.R. §35.160(b)(1). Further, Title V of the Texas Education Code emphasizes TEA's affirmative duty to ensure the compliance of driver education course providers with applicable state and federal laws, such as Chapter 121 and the ADA: as a requirement for licensure, TEA must confirm "on investigation" that "the course provider complies with all county, municipal, state, and federal laws." TEX.EDUC. CODE §1001.206(7).

34.   TEA has been made aware of the discriminatory practices by Defendant ABC and other driving schools against individuals with hearing disabilities. However, TEA refuses to provide access to individuals with hearing disabilities in its driver education program and refuses to enforce any system of ensuring that driver education schools provide reasonable accommodation to people with hearing disabilities.

35.   Further, TEA may not delegate this affirmative duty to third parties. "A public entity may not, directly *or through contractual or other arrangements*, utilize criteria or methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability." 28 C.F.R. §35.130(b)(3)(i) (emphasis added).

36.   TEA has refused to make its driver education program available to individuals with hearing disabilities on an equal basis with those who are hearing, in violation of 42 U.S.C. §12132.  TEA has utilized methods of administration that have subjected individuals with hearing disabilities to discrimination on the basis of their disability, prohibiting Ms. Ivy and others from obtaining a driver license, in violation of 28 C.F.R. §35.130(b)(3)(i).  By refusing to comply with the law, TEA allows all driver education schools to discriminate against people with disabilities.

2. <u>Violations of Section 504 by Defendant Robert Scott in his Official Capacity</u>

37. For all the reasons stated, Ms. Ivy similarly alleges a cause of action under the Rehabilitation Act against TEA (Robert Scott, in his official capacity).

38. The Rehabilitation Act states, "No [person] shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving federal funding assistance." 29 U.S.C. §794(a).

39. TEA is therefore in violation of the Rehabilitation Act because it has subjected Ms. Ivy to discrimination on the basis of her disability.

### 3. Violations of Title III of the ADA by Defendant Robert Reyna, d/b/a ABC Driving School

40. Defendant Robert Reyna, d/b/a ABC Driving School, denied Ms. Ivy full and equal enjoyment of its facilities and services by its refusal to accommodate her disabilities by failing to provide an interpreter, in violation of Title III of the ADA.

41. Title III provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. §12182(a).

42. ABC is a "service establishment" and "place of education" and, as such, is a "place of public accommodation" under the ADA. *Id.* §12181(7)(f), (j).

43. Title III requires ABC to "make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to individuals with disabilities." *Id.* §12182(b)(2)(A)(iii). ABC violated Title III by failing to provide an interpreter.

44. Title III requires ABC to "take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated

differently than other individuals because of the absence of auxiliary aids and services." *Id.* §12182(b)(2)(A)(iii).

45. By refusing to provide Plaintiff with an interpreter so that she could participate effectively in a driver education course, ABC treated Plaintiffs differently from other individuals, in violation of Title III.

4. <u>Violations of Chapter 121 by Defendant Robert Reyna, d/b/a ABC Driving School</u>

46. Chapter 121 states that persons with disabilities have the same right as able-bodied people to the full use of any public facility, which includes ABC's driver education courses. TEX. HUM. RES. CODE §§121.002(5), 121.003(a).

47. ABC's refusal to make its courses equally accessible has denied, and continues to deny, Plaintiff and others similarly situated, due to their disabilities, the same rights that persons without those disabilities have to the full use and enjoyment of that public accommodation, in violation of Chapter 121. *Id.* §§121.003(a), (d)(2), and (d)(3).

48. By refusing to provide courses that are equally accessible to the hearing impaired, Defendant ABC has discriminated, and continues to discriminate, against Plaintiff and others similarly situated, due to their disabilities.

49. ABC has the legal duty to make reasonable accommodations in its policies, practices, and procedures to ensure that Plaintiff, and those similarly situated are not discriminated against. *Id.* §121.003(d)(2). By failing to make any reasonable accommodations for Plaintiff, ABC has violated, and continues to violate, Chapter 121.

50. ABC has the legal duty to provide auxiliary aids and services necessary to allow the full use and enjoyment of the public facility. TEX.HUM.RES. CODE §121.003(d)(3). By refusing

to provide effective auxiliary aids and services to allow access by Plaintiff to its driver education course, Defendant ABC has violated and continues to violate Chapter 121.

51. A person or entity that violates Chapter 121 is deemed to have deprived a person with a disability of his or her civil liberties. *Id.* §121.004(b). There is a conclusive presumption of damages of at least $100 for each violation of law, for which ABC is liable to Plaintiff as a result of the allegations herein. *Id.* There is no maximum penalty.

## RELIEF REQUESTED

### Injunctive Relief

52. Ms. Ivy will continue to experience unlawful discrimination as a result of Defendants' refusal to comply with the ADA, the Rehabilitation Act, and Chapter 121. Injunctive relief is necessary so that she and other individuals with hearing disabilities can have equal access to the driver education program provided by TEA and the services provided by licensed driving schools, as required by law.

### Declaratory Relief

53. Plaintiff is entitled to declaratory judgment concerning each of Defendants' violations of law, specifying the rights of individuals with disabilities to access the services available through TEA's driver education program, at TEA-licensed driving schools, and in the issuance of TEA driver education certificates.

### Attorney's Fees and Costs

54. Plaintiffs are entitled to reasonable attorney's fees, litigation costs, and court costs pursuant to the ADA, 42 U.S.C. §§12133, 12188 and 2000a-3; the Rehabilitation Act, 29 U.S.C. §794a.

## PRAYER FOR RELIEF

THEREFORE, Plaintiff respectfully requests that this Court:

A. Issue a permanent injunction, requiring Defendant Scott in his official capacity, and all persons acting in concert with TEA, to cease all discrimination and eliminate all barriers to accessibility that prevent Plaintiff, and all others similarly situated, from having access to driver education and driver education certificates provided by TEA through TEA licensed driver education schools;

B. Issue a permanent injunction requiring TEA to establish effective policies and programs of access for hearing-disabled people through qualified interpreters and other aids, as appropriate, and to enforce such policies and programs with licensed driver education schools;

C. Issue a permanent injunction to require ABC Driving School to reasonably accommodate people with hearing disabilities by providing interpreters or other effective auxiliary aids and services to people with hearing disabilities;

D. Enter declaratory judgment that Defendants' discrimination in the past has prevented and continues to prevent Plaintiff, and those similarly situated, from fully accessing the programs and services provided by TEA and TEA-licensed driving schools, in violation of the ADA, the Rehabilitation Act, and Chapter 121;

E. Find that Plaintiff is the prevailing party in this action, and order Defendants to pay her attorney's fees, costs, and litigation expenses;

F. Award Plaintiff actual and/or statutory damages against Defendant ABC in the amount of at least $100 for each violation of Chapter 121; and,

G. Grant such other and additional relief to which Plaintiff may be entitled.

Dated:   September 16, 2011.

    Respectfully submitted,

    /s/ Joseph P. Berra
    Joseph P. Berra
    State Bar No. 24027144
    James C. Harrington
    Texas Bar No. 09048500
    Wayne Krause
    State Bar No. 24032644

    TEXAS CIVIL RIGHTS PROJECT
    1405 Montopolis Drive
    Austin, Texas 78741-3438
    (512) 474-5073 (phone)

(512) 474-0726 (fax)

ATTORNEYS FOR PLAINTIFFS

CERTIFICATE OF SERVICE

      This is to certify that a true copy of the foregoing has been served on counsel of record for Defendant Scott through the Electronic Case Files System of the Western District of Texas on September 16, 2011, and to Defendant Robert Reyna and his counsel by first class mail to:

| | |
|---|---|
| Robert Reyna | Anne Wynne |
| Owner of ABC Driving School | Ikard Wynne LLP |
| 6516 S. 1st St. | 515 Congress Ave., Suite 1320 |
| Austin, TX 78745 | Austin, TX 78701 |

                                            /s/ Joseph P. Berra
                                            Joseph P. Berra