UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DONNIKA IVY, BERNARDO GONZALEZ, ERASMO GONZALEZ, ARTHUR PROSPER IV, and TYLER DAVIS as next friend of JUANA DOE, A MINOR, | § § § § § | |
| Plaintiffs, | § | CIVIL ACTION NO. A-11-CA-660 LY |
| v. | § § | |
| COMMISSIONER MICHAEL WILLIAMS, in his official capacity, as head of TEXAS EDUCATION AGENCY, | § § § | COMPLAINT – CLASS ACTION |
| Defendant. | § § § | |

## FOURTH AMENDED COMPLAINT

Plaintiffs bring this action on behalf of themselves and a class of all other persons similarly situated against Defendant Commissioner Michael Williams, in his official capacity as head of the Texas Education Agency ("TEA"), and would respectfully show:

## I.  SUMMARY OF COMPLAINT

Disability discrimination statutes provide that a public entity may not deny people with disabilities access to its programs or services.  TEA regulates the mandatory driver-education program all Texans under age twenty-five must complete to obtain a driver license.  TEA has refused to ensure that the driver-education program, administered through TEA-licensed and regulated schools, includes accommodations for individuals with hearing disabilities.  Plaintiffs are profoundly deaf individuals who, because of TEA's failure to act, cannot complete the driver education courses and obtain their licenses.  They ask this Court to declare that TEA must make certain that the hearing disabled have access to mandatory driver education courses.

TEA licenses, regulates, and reviews the schools, and provides them with a model curriculum that can be used as a stand-alone course. It even issues the schools course-completion certificates to be used by the public, and collects a $1 per certificate fee from the schools, which it uses to fund the driver training program. But the agency argues that is has no duty to ensure that the hearing disabled can access the program, and refuses to enact regulations to accommodate the thousands of Texans with hearing disabilities who wish to obtain their driver licenses. Instead, TEA asserts that the driver-education program is not a service, program, or activity of TEA under the ADA, or part of TEA's programs or activities under Section 504, and Plaintiffs' only recourse is to sue the individual driver education schools.

TEA has also refused to design and approve courses that would be accessible to persons with hearing disabilities, develop appropriate course materials for the deaf, coordinate with other state agencies, or otherwise ensure that individuals with hearing disabilities who must complete a driver education course have access to such courses. As the result of TEA's failure to take measures designed to provide them access, Plaintiffs and those similarly situated have been unable to find TEA-licensed driver education courses that accommodate their disabilities. Hundreds of young deaf Texans cannot get driver licenses needed to attend school, find jobs, and achieve financial independence.

## II.  STATEMENT OF CLAIM

1.      Plaintiffs bring this action on behalf of a class of all similarly-situated individuals for declaratory and injunctive relief, attorneys' fees, costs, and litigation expenses for TEA's failure to create regulations or provide accommodations as part of TEA-licensed and regulated driver-education programs, in violation of Title II of the Americans with Disabilities Act

("ADA"), 42 U.S.C. §§12132 *et seq.* and Section 504 of the 1973 Rehabilitation Act ("Rehabilitation Act" or "Section 504"), 29 U.S.C. §794.

## III.  JURISDICTION AND VENUE

2.      This Court has jurisdiction under 28 U.S.C. §§1331 and 2201.

3.      Venue is proper in this Court, pursuant to 28 U.S.C. §1391(b), because some of the events complained of occurred within Travis County and Defendant is located in Travis County.

## IV.  PARTIES

### Plaintiff Donnika Ivy

4.      Ms. Ivy, twenty-one years old, lost her hearing at the age of two and uses American Sign Language (ASL) as her primary means of communication. Ms. Ivy is an individual with a "handicap" as defined by the Rehabilitation Act, and a qualified "person with a disability" as defined by the ADA.  Ms. Ivy's first and native language is American Sign Language. Because of new legislation requiring completion or driver education courses for first-time driver license applicants who are twenty-five years old or younger, Ms. Ivy could not obtain a license unless she successfully completed a TEA-approved course, which she could not do so without the services of a sign-language interpreter or other accommodations in ASL.  She contacted a number of driver education schools but could not find one willing to provide her with necessary accommodations.  Ms. Ivy was unable to obtain employment or continue her education because she was unable to drive.  She was enrolled in Austin Community College, but had to stop attending due to lack of transportation. Ms. Ivy's inability to obtain a driver license severely limited her options, halted her ability to pursue her goals, and fundamentally altered the way in

which she lived her life.   Ms. Ivy's claims are typical of most individuals with hearing disabilities ages 18-25 who desire to take a driver education course to obtain their driver license.

### Plaintiffs Bernardo and Erasmo Gonzalez

5.      Bernardo and Erasmo Gonzalez are eighteen year old twin brothers.   They are severely hearing impaired.   The young men are individuals with a "handicap" as defined by the Rehabilitation Act, and qualified "persons with a disability" as defined by the ADA.   Their first language is ASL.   They attend public school, which provides them with a full-time ASL interpreter.   Like most young people their age, Bernardo and Erasmo Gonzalez would like to obtain Texas licenses, but none of the schools they contacted agreed to provide them with accommodations.   Even more importantly, the boys need to drive to help their family accommodate their disabilities. Their mother, Ms. Graciela Velasquez is a single, working mother who also has two young daughters.   Managing transportation needs for the entire family is a major challenge.

6.      If Bernardo and Erasmo could obtain their licenses, they could help their mother with various chores and duties, such as driving their sisters to and from school, going to the store, and other errands.   Moreover, their activities are severely limited due to the family's constrained transportation options.   Bernardo was unable to play high school football because his mother was unable to take him early to school for practices, or pick him up later in the afternoon. They would both like to find employment, but have been severely limited without a license. Bernardo and Erasmo also attend a different church from their mother.   They attend a church which provides ASL signing for its English-language services.   Ms. Velasquez attends a different church, which has services in Spanish.   The family has difficulty fulfilling the religious needs of everyone because of the transportation challenges.   When they were minors, Ms. Velasquez

1020211

considered herself unqualified and unable to provide the parent-taught course to her sons.[1]  As young adults, the Gonzalez twins must still take a driver education course, and have found none that adequately accommodates their disability.  They would like to fully participate in school and extra-curricular activities, help their mother, attend church, and start working with the aid of driver licenses.  Because of TEA's refusal to act, they have been frustrated in this regard.  The young men's claims are typical of most people with hearing disabilities ages 18-25 who desire to take a driver education course to obtain their driver license.

**Plaintiff Arthur Prosper**

7.      Arthur Prosper IV is twenty-one years old and was born deaf.  Mr. Prosper is an individual with a "handicap" as defined by the Rehabilitation Act, and a qualified "person with a disability" as defined by the ADA.  His first language is ASL.  He learned written English as a second language, and like most deaf individuals has limited English literacy skills—he reads at a fifth-grade level.  Mr. Prosper had to turn down employment opportunities at Six Flags Texas in Arlington because he does not have a driver license.  Mr. Prosper is also a member of a Jehovah's Witness congregation in Fort Worth, Texas that ministers specifically to the deaf community.   He would like to take on more responsibility as a youth minister in the congregation, but that requires having a driver license to travel to the surrounding counties.  Mr. Prosper has been unable to obtain a license because he has not been able to find a driver education school offering necessary accommodations.  Mr. Prosper's claims are typical of most

---

[1] Ms. Velasquez was previously a plaintiff in this lawsuit on the twins' behalf while they were minors.  The Court dismissed Ms. Velasquez' claims without prejudice on September 24, 2012, ruling she had not shown injury since the parent-taught course was in theory available to her boys.  ECF No. 41.  Because the twins turned eighteen between the filing of this action and the Court's ruling, they subsequently joined the suit as named plaintiffs.

people with hearing disabilities ages 18-25 who desire to take a driver education course to obtain their driver license.

## **Plaintiff Juana Doe**

8.      Juana Doe is seventeen years old and was born deaf.  Ms. Doe is an individual with a "handicap" as defined by the Rehabilitation Act, and a qualified "person with a disability" as defined by the ADA.  Her first language is ASL.  She learned written English as a second language.  Plaintiff Tyler Davis is Ms. Doe's domestic partner.  They have a child together. Juana has been unable to obtain a driver license because there is no driver education course or school near her that accommodates her disability.  Juana is estranged from her parents, who are not willing to instruct her in the parent-taught course for minors.  In November of 2012 she contacted a driving school in Plano, Texas and requested accommodation for her disability for either driver education for minors, or for adults after she turns 18.  The school refused to accommodate her request for either course.  She has been unable to find another school to accommodate her disability and obtain her driver license.  Ms. Doe's claims are typical of most minors with hearing disabilities ages 16-17 who desire to take a driver education course to obtain their driver license and do not have a parent or guardian willing or able to administer the parent-taught course.

## **Defendant**

9.      Defendant Williams, as Commissioner of Education, is the head of TEA, a state agency tasked with, *inter alia,* supervising educational programs and services for individuals who must meet the requirements of a state-approved driver education course to obtain a driver license. In this Complaint, "TEA" refers to Williams in his official capacity.

6

1020211

## V.  STATEMENT OF FACTS

10.    Driver education is a state-mandated program.  Under legislation which became effective in March of 2010, an applicant under age twenty-five may not obtain a driver license unless the applicant has completed a TEA-approved driver course and obtained a TEA certificate of completion. TEX. TRANSP. CODE §§521.142(d), 521.1601.  The only way to fulfill the driver education course requirement is through a TEA-certified school.  TEA is the primary agency charged with supervising the schools and administering the state driver-education program, and the only entity that issues certificates of completion used by program graduates.  *Id.* §1001.053, .055.  After completing the driver-education program, an applicant submits the TEA-issued certificate to the Department of Public Safety ("DPS") to obtain the Texas driver license from the State.

11.    In order to meet new requirements passed by the Legislature, Ms. Ivy, Bernardo and Erasmo Gonzalez, Mr. Prosper, and Ms. Doe repeatedly contacted driving schools in their area to request accommodations for the course.  The schools all refused to provide necessary accommodations.  Plaintiffs' inability to get driver licenses severely limited their ability to pursue jobs, college education, and employment.  They, and many others, have turned to the deaf advocates for help.

12.    Heather Bise, a Deafness Resource Specialist with the Texas Department of Assistive and Rehabilitative Services, has received and investigated a number of complaints from people with hearing impairments regarding their inability to access driver education courses, obtain their certificates, and get driver licenses. The complaints began in March 2010, after the new law requiring first-time license applicants under age twenty-five to take a TEA-approved driver education course went into effect. TEX. TRANSP. CODE §§521.142(d), 521.1601.

7

Because the TEA-adopted driver education regulations did not explicitly require the schools to provide disability accommodations, schools across Texas systematically refused to provide interpreter services for people with hearing disabilities, or to otherwise accommodate their disability.

13.     In September 2010, Ms. Bise complained to TEA about schools' refusal to provide sign-language interpreters and the complete obstacle this creates for people with hearing disabilities.  Exhibit 1, Email from Ms. Bise with TEA Tracking No. 2010-09-029. Ms. Bise noted that, on average, deaf individuals read and write from a third to fifth-grade level, because written English is based on auditory language, and that ASL interpreters are most appropriate in educational settings.  *Id.*

14.   Rather than fix the problem, TEA directed Ms. Bise to the U.S. Department of Justice (DOJ).  Exhibit 2, Letter from Victor Alegria.  TEA ignored its own independent legal obligation to reasonably accommodate individuals with hearing disabilities, and further abdicated its statutory authority to develop regulations that require equal access to driver-education programs. TEA took the position that it only had to enforce compliance if DOJ found a violation by a particular driving school, a position incongruous with its express statutory authority to create regulations and enforce compliance with the state and federal law as it relates to driver-education programs.  *See* TEX. EDUC. CODE §§1001.053(3), .051, .206(7).

15.   Ms. Bise filed a DOJ complaint against TEA on behalf of Ms. Ivy and others.  DOJ referred the matter to the Office of Civil Rights of the Department of Education (OCR). OCR acknowledged jurisdiction over TEA, as a recipient of federal funds under the Rehabilitation Act and for purposes of Title II of the ADA, but adopted TEA's framing of the issue — reviewing only whether TEA had an obligation to enforce the ADA with the individual driving schools.  In

doing so, OCR did not address a critical issue in this suit — TEA's independent, affirmative obligation to make provisions for accommodation and access of driver courses for people with hearing impairments, as well as TEA's obligation to enforce compliance with such provisions.

## VI.  CLASS ACTION ALLEGATIONS

A.    **The Plaintiffs' tentative class definition.**

16.    Plaintiffs bring this suit for their individual claims and in a representative capacity on behalf of individuals who all share the same immutable characteristic—they cannot hear. Plaintiffs file their claims pursuant to FED. R. CIV. P. 23(a) and (b)(1)-(b)(2) because: (1) prosecuting separate actions by the individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members, and the adjudications with respect to individual class members would be dispositive of the interests of the other members not parties to those adjudications; and (2) TEA's refusal to fulfill its duty to accommodate the Plaintiffs' requests for access to driver education courses applies generally to the entire class because TEA assets that it has no independent duty to accommodate the Plaintiffs' disabilities under the ADA and the Rehabilitation Act.  The proposed class of individuals is defined as follows:

All profoundly deaf individuals in the State of Texas whose primary language is ASL and who:

Subclass 1

> Are between ages 16 and 17, unable to obtain a Texas driver license because they cannot complete a driver education course without accommodations, and cannot take a parent-taught driver education course.

Subclass 2

> Are between ages 18 and 25 and are unable to obtain a Texas driver license because they cannot complete a driver education course without accommodations.

B.    **The proposed class meets the prerequisites for class treatment.  FED. R. CIV. P. 23(a)**

1.    **Numerosity is met.**  **"[T]he class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1).**

17.    The class members are so numerous and geographically dispersed that joinder of all members is impracticable.  There are hundreds of people with hearing disabilities between the ages 16-25 living throughout Texas who are unable to receive a Texas driver license because the there are no driver education courses designed to accommodate their disability.  *See* Exhibit 3, Declaration of Heather M. Hughes; *see also* Traxler, C.B., *The Stanford Achievement Test: National Norming and Performance Standards for Deaf and Hard-of-Hearing Students*, JOURNAL OF DEAF STUDIES AND DEAF EDUCATION, 337-48 (2000).  Not only does the sheer number of individuals make joinder impracticable, but the geographic diversity precludes joinder.  These individuals are dispersed throughout the state of Texas, and cannot readily join the present lawsuit.

2.    **Commonality has been established.**  **"[T]here are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2).**

18.    The questions of fact and law at issue in this suit are common to Plaintiffs and all class members.  The proposed class includes individuals with hearing disabilities who cannot complete a driver education course without accommodations due to their inability to hear and their limited English ability—their primary language is ASL.  The questions regarding TEA's obligation to accommodate their disabilities, and the measures necessary to do so, are common to all class members.  The common questions of law will resolve both the named Plaintiffs' claims and the claims of all class members:

- Is driver education a service, program, or activity of TEA under Title II of the ADA, or a program or activity of TEA under Section 504?

10

- Did TEA violate its duty under the ADA and Section 504 by refusing to accommodate the class members (including the Plaintiffs) by ensuring they can access the driver-education program and receive a course-completion certificate necessary to obtain a Texas driver license?

- Is the class members' injury redressable by regulations that ensure that driver education is accessible to them?

- Does TEA have statutory authority to take affirmative action to redress class members' injuries?

Additionally, some common questions of fact include:

- Do the commercially available driver education courses fail to accommodate people with hearing disabilities because they contain a significant audio component?

- Are the individuals with hearing disabilities whose first language is ASL insufficiently accommodated by courses offered in written English?

- Is TEA the primary Texas agency in charge of driver education schools and driver education curriculum?

- Can TEA develop procedures, programs, or regulations that would ensure accommodations for the hearing disabled?

- Did TEA fail to accommodate individuals with hearing disabilities by refusing to develop regulations or materials that would allow them to obtain a driver education course-completion certificate necessary to obtain a Texas driver license?

1020211

3.      **Plaintiffs' claims are typical of the class.**  "[T]he claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3).

19.      The Plaintiffs and other class members share claims because they all desire the same thing—a driver education course designed for people with hearing disabilities who cannot take a driver education course without accommodations, finally allowing them to obtain a Texas driver license.  In that regard, each Plaintiff's claim is typical of that Plaintiff's subclass and the class as a whole.  Among the typical claims are:

   1. Plaintiff Juana Doe, like other 16-17 year old class members,[2] is unable to complete a commercially available driver education course due to lack of accommodations. She does not have a parent or qualifying relative willing to administer the parent-taught driver education course for minors.  Because TEA refuses to develop programs and regulations allowing people with hearing disabilities equal access to driver education courses, she cannot obtain a Texas driver license.  Ms. Doe's claims are typical of other 16-17 year old class members.

---

[2] Ms. Doe turned eighteen on January 17, 2013.  However, she remains to be an adequate class representative because the present lawsuit was filed before she turned eighteen.  Ms. Doe's claims are on behalf of individuals who are 16 or 17—a transitory status of such nature that no one named plaintiff is likely to remain within the subclass throughout litigation.  Such claims are capable of repetition yet evading review, and the courts allow such individuals to remain class representatives. *See Sosna v. Iowa*, 419 U.S. 393, 400-401 (U.S. 1975) (holding that the case where "the issue sought to be litigated escapes full appellate review at the behest of any single challenger, does not inexorably become moot by the intervening resolution of the controversy as to the named plaintiffs" and even if "the controversy is no longer alive as to [the named plaintiff], it remains very much alive for the class of persons" that plaintiff sought to represent); *Rocky v. King*, 900 F.2d 864, 869-70 (5th Cir. 1990) (the "capable of repetition, yet evading review" exception applies to inherently transitory claims absent indication that "any given individual, named as plaintiff" would remain an adequate class representative long enough for class to be certified).

2.  Plaintiffs Ivy, Prosper, and the Gonzalez twins, like other 18-25 year old class members, are unable to complete a commercially available driver education course without accommodations.  Because TEA refuses to develop programs and regulations allowing people with hearing disabilities equal access to driver education courses, they cannot obtain a Texas driver license.  Their claims are typical of other 18-25 year old class members because all available driver education courses fail to accommodate their disability and do not offer translation to their first language—ASL.

4.  **Plaintiffs are adequate class representatives.**  "[T]he representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4).

20.     The Plaintiffs are individuals with hearing disabilities in Texas who are unable to complete a driver education course accommodating their disability in order to obtain a driver license.  They understand their duties as class representatives.  No named Plaintiff has claims that presently or potentially put them in conflict with any members of the class.  The Plaintiffs have retained Scott, Douglass & McConnico L.L.P. as class counsel competent and experienced in class action and ADA/Section 504 civil rights litigation.  The Plaintiffs will fairly and adequately protect the interests of the members of the class.

C.  **The proposed class meets the requirements of FED. R. CIV. P. 23(b)(1)-(b)(2).**

1.  **Separate actions would create the risk of inconsistent adjudications or adjudications dispositive of the interests of individuals who are not parties to the individual lawsuits.**

21.     Unless this Court allows class action treatment, other individuals may file similar lawsuits in various federal district courts across the state.  These lawsuits may result in inconsistent or varying rulings with respect to individual class members despite the same or

13

materially similar facts, and may delay benefits for members of the class.  It is in the interest of the Plaintiffs and TEA to resolve the issues affecting Plaintiffs and other class members in a class action in order to avoid inconsistent results and to avoid subjecting TEA to inconsistent standards of conduct.

22.     Alternatively, because the issues at the heart of this dispute are common to Plaintiffs and all class members, any adjudication with respect to individual class members would be dispositive of the interests of the other members, who are not parties to the individual adjudications, or would substantially impair their ability to protect their interests in similar law suits.  Accordingly, resolving the litigation on a class-wide basis is appropriate.

> **2.     TEA has refused to act on grounds that apply generally to the class, and final injunctive and declaratory relief is appropriate for the class as a whole.**

23.     TEA has refused to enact regulations requiring accommodations for people with hearing disabilities, asserting that the agency has no independent duty (apart from the individual driver education schools) to accommodate Plaintiffs' disabilities.  TEA has also refused to develop courses or curricula appropriate for people with hearing disabilities, or otherwise ensure them access to driver education.  Because the grounds of TEA's refusal apply equally to Plaintiffs and the class as a whole, the injunctive and declaratory relief sought by the Plaintiffs is appropriate for the entire class.  In fact, the remedies sought by the Plaintiffs—(1) declaratory judgment that TEA bears an independent responsibility under federal disability law to effect policies and procedures providing for access to driver education courses to people with disabilities; (2) declaratory judgment that TEA's past discrimination denied access in violation of the ADA and the Rehabilitation Act; (3) permanent injunction to cease all discrimination and eliminate all barriers to accessibility of driver education; and (4) permanent injunction requiring

TEA to establish effective policies and programs providing for access for people with hearing disabilities through qualified interpreters and other aids, as appropriate, and to enforce such policies and programs with licensed driver education schools—are highly conducive to a class action litigation.

## VII.  CAUSES OF ACTION

### (1)  Violations of Title II of the ADA.

A.   **As a public entity, TEA must ensure equal access to its services, programs, and activities.**

24.     Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132.  TEA is a "public entity" under Title II.  *Id.*  §12131(1)(b).

25.     Under the Code of Federal Regulations, "[a] public entity shall take appropriate steps to ensure that communications with . . . members of the public with disabilities are as effective as communication with others." 28 C.F.R §35.160(a).  Additionally, "[a] public entity shall furnish appropriate auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of, a service . . . conducted by a public entity." *Id.* §35.160(b)(1).

26.     TEA is required to ensure, through rule-making, course development, supervision, coordination with other agencies, and any other appropriate means, that driving schools accommodate individuals with hearing disabilities as a condition of licensure and continued operations.  Incorporating ADA regulations in its program administration will fulfill TEA's responsibility to inform the schools of their ADA obligations.  Evaluating ADA compliance during initial licensing and license renewal would also promote compliance if schools are

informed that they will not obtain a license (or have their license revoked) if they do not provide ADA accommodations.  All such actions that are fully within TEA's statutory authority.  *See* TEX. EDUC. CODE §§ 1001.051, .454.  Because TEA failed to develop programs that accommodate the hearing-impaired or enact regulations requiring driving schools to provide accommodations, Plaintiffs and others similarly situated have been unable to apply for and obtain a Texas driver license.

**B.    The driver-education program is a "service, program, or activity" within the meaning of the ADA.**

27.    Driver education is state-mandated education.  TEA gives schools access to qualified driver education courses and driver education certificates. TEX. EDUC. CODE §§1001.053, 1001.055-6, 1001.101, 1001.1015, 1001.104-110, 1001.153, 1001.201-214.  Under Title II, TEA must provide access to its programs and services to individuals with hearing disabilities. *See* 28 C.F.R. §35.160(b)(1).  Further, Title V of the Texas Education Code emphasizes TEA's affirmative duty to ensure the compliance of driver education providers with applicable state and federal laws: as a licensure requirement, TEA must confirm "on investigation" that "the course provider complies with all county, municipal, state, and federal laws."  TEX. EDUC. CODE §1001.206(7).  Unquestionably, this includes compliance with the ADA.  Yet TEA has failed to take any steps to ensure such compliance, and refuses to do so in the future.

**1.    State-mandated driver education is not a mere licensing arrangement.**

28.    The extent of TEA's supervision of and authority over driver education courses and schools makes its involvement in the program a part of its function and operation.  TEA has the authority and obligation to do the following with regard to driver education:

16

a.    set and enforce rules and minimum standards (TEX. EDUC. CODE §1001.053);

b.    establish the curriculum (*Id.* §1001.101);

c.    designate materials (*Id.* §1001.1015);

d.    control the issuance of a uniform certificate of completion (*Id.* §1001.056);

e.    coordinate curriculum development with other state agencies, including the Texas Department of Public Safety (*Id.* §§1001.107, 1001.110), Texas Rehabilitation Commission (*Id.* §1001.104), Texas Department of Insurance (Id. §1001.105), and Texas Department of Health (*Id.* §1001.108);

f.    license driver education schools (*Id.* §1001.201-214);

g.    license instructors (*Id.* §1001.251-257);

h.    resolve complaints against the schools, visit schools, and reexamine them for compliance (*Id.* §§1001.053, 1001.153, 1001.206);

i.    determine and ensure the schools' compliance "with all county, municipal, state, and federal regulations" (*Id.* §1001.204(7)); and ultimately exercise jurisdiction and control *over driver training schools* (*Id.* §1001.051) (emphasis added).

29.    This involvement goes far beyond establishing general criteria to determine whether self-regulated businesses should be licensed.  *See, e.g.*, *Tyler v. City of Manhattan*, 849 F. Supp. 1429 (D. Kan. 1994); *Reeves v. Queen City Transp.*, 10 F. Supp. 2d 1181 (D. Colo. 1998); *Paxton v. State Dept. of Tax and Revenue*, 451 S.E.2d 778 (W. Va. 1994); *Noel v. New York City Taxi & Limousine Comm'n (TLC)*, 687 F.3d 63, 69 (2d Cir. 2012).  The authority of the agencies in those cases was limited to licensing private businesses as a part of the agencies' overall regulatory function.  *See Tyler*, 849 F. Supp. at 1441-42 (licensing of liquor stores); *Reeves*, 10 F. Supp. 2d at 1186 (licensing of buses between city and various ski and gambling resorts); *Noel*, 687 F.3d at 69 (licensing of taxi cabs).  None of those businesses operated in an industry created by the state legislature.  *Id.*

17

30.     Unlike those cases, the Texas driver-education program begins and ends with a state action.  It was created by the Legislature for driver license applicants ages 16-25, who complete it through their receipt of a TEA-issued course-completion certificate given to them by TEA-licensed schools.  *See* TEX. EDUC. CODE §§1001.053(3), .051, .206(7).  The Legislature mandated education for first-time driver license applicants under twenty-five years of age and designated TEA as the agency responsible for administering the program.  TEX. TRANSP. CODE §§521.142(d), .1601.  No person under twenty-five can obtain a first license without successfully completing such driver education and presenting a course-completion certificate. Thus, TEA's involvement with driver education is distinct from another agency's supervision of entertainment or service-based businesses.

> **2.      TEA designed and now manages the driver-education program, sets its curriculum, issues certificates for public use, and collects fees for such certificates.**

31.     Although the ADA provides no definition for "service, program, or activity," a number of courts have held that the Rehabilitation Act term definitions are instructive in defining terms under the ADA.  *See*, *e.g.*, *Winborne v. Virginia Lottery*, 677 S.E.2d 304, 307 (Va. 2009) (quoting 42 U.S.C. § 12201(a); *Baird v. Rose*, 192 F.3d 462, 468 (4th Cir. 1999)).  The Rehabilitation Act defines "[p]rogram or activity" as "all of the operations of a . . . department, agency, special purpose district, or other instrumentality of a State or of a local government."  29 U.S.C. § 794(b).  Moreover, DOJ regulations provide that the ADA applies to "all services, programs, and activities provided or made available by public entities."  28 C.F.R. 35.102(a).

32.     TEA designs the driver-education program's minimum requirements, develops the curriculum, including sample minor and adult classroom and in-car course outlines provided to the schools, and certifies the schools and instructors who make it available to the public.  *See*

TEX. EDUC. CODE §§1001 *et al.*   TEA also creates the materials for the parent-taught driver education course, which are alone sufficient to fulfill the course requirements, and provides them directly to the parents.   The agency issues course-completion certificates to schools, that the schools then give to each student who completes the driver education course.   It even collects a $1 fee for each course-completion certificate from the driver education schools, which the schools receive from the public.   That money is then used to fund the driver training program.

33.     TEA's statutory authority to regulate driver schools is starkly different from licensing of other private programs because it allows the agency to create its own regulations to ensure compliance with all state and federal laws.   *Cf.* TEX. EDUC. CODE §§1001.053(3), .051, .206(7) *with*, *e.g.*, *Reeves*, 10 F. Supp. 2d at 1186.   TEA exerts a significant amount of control over the schools' activities, provides instructional materials including minor and adult classroom and in-car course curricula, sets the minimum instructional guidelines, issues official completion certificates, and collects fees for the certificates from the driver education schools.   *Id.* Moreover, TEA's public driver-education program regulations require that all practice vehicles for disabled students, including those provided by the State, "be equipped with all applicable mechanical devices and/or other modifications or accommodations determined to be necessary and appropriate based on evaluation data."   19 TEX. ADMIN. CODE §75.1010(a)(7).   Although the companion private driver-education regulations do not require an evaluation of data to determine what accommodations are appropriate, comparing the two shows that TEA has the authority to require necessary accommodations.   *Cf. id. with* 19 TEX. ADMIN. CODE §176.1014(a). Additionally, TEA develops a ready-to-use parent-taught course that fulfills all of the statutory minimum course requirements.

19

34.     TEA's activities go beyond mere creation of general licensing criteria for self-regulated businesses.  It even provides its licensees with a model course which meets all of the course licensing requirements—no further action by the school is required.  Because the courses are an educational program for teens and young adults, TEA's role, as defined by the Legislature, goes far beyond licensing.  Thus, TEA bears an independent responsibility to accommodate Plaintiffs and all similarly situated under Title II of the ADA.

35.     Because TEA's statutory authority to administer state-mandated driver education extends to all aspects of driver education, it is part of the agency's programs and activities.  *See Winborne*, 677 S.E.2d at 307-08 (an agency's direct involvement with the lottery program it controlled and supervised imposed an independent obligation to comply with the ADA).  Thus, TEA has an independent obligation, separate from that of the individual schools, to obey the ADA.  TEA's responsibility for ensuring that disabled teens and young adults are able to participate in the program must go beyond a one-sentence reminder to the schools that they must comply with all laws, as it does right now – an statement it has taken no measures to enforce.  Exhibit 4, Driver Education School License Application, p. 4, part G.

C.     **TEA failed to ensure Plaintiffs equal access to driver education and refuses to require ADA compliance of the individual schools.**

36.     TEA was informed of the discriminatory practices of the schools Plaintiffs contacted attempting to take a driver education course.  Exhibit 1, Email from Ms. Bise with TEA Tracking No. 2010-09-029.  Still, TEA refuses to acknowledge its duty to create and enforce a system to ensure that the driving schools provide reasonable accommodations to people with hearing disabilities.  TEA admits it has the statutory authority to take enforcement actions to ensure individual schools come into compliance.  Exhibit 2, Letter from Victor Alegria.  But TEA asserts that DOJ is the agency "primarily responsible for the enforcement of

20

the ADA," and refuses to act without a finding from the DOJ that a violation had occurred.  *Id.*
Not only does the DOJ's ability to enforce the ADA against the driving schools under Title III
not strip enforcement authority from TEA, the state agency tasked with licensing the schools and
ensuring they comply with all state and federal regulations, but this argument ignores TEA's
*independent* obligation to ensure ADA compliance under Title II.

       37.    TEA has failed to direct driver education schools to accommodate disabled
persons or otherwise make its driver-education program equally available to them in violation of
42 U.S.C. §12132.  By refusing to exercise its rule-making authority under the Texas Education
Code, TEA allowed and continues to allow all driver schools to discriminate against people with
disabilities.  Moreover, TEA has done nothing to ensure that the program as a whole and the
individual schools are ADA-compliant during its licensing and license renewal process.  TEA
cannot point to a single licensed driver education school that offers courses in ASL, except for
the Texas School for the Deaf in Austin, and has made no efforts to ensure that each major
geographic area in Texas has such schools.  Neither TEA's model driver education course nor
TEA's parent-taught course have been designed with the hearing-impaired individuals in mind.
TEA has developed no driver education curricula specifically for individuals with hearing
disabilities, and provides them with no specialized driver education materials whatsoever.  Thus,
Plaintiffs' injury is directly traceable to TEA's refusal to either (1) ensure that each driving
school understands and complies with its ADA obligations by providing accommodations, or (2)
develop its own alternative accommodations that provide access to the hearing disabled
individuals.  This refusal subjected Plaintiffs and other individuals with hearing disabilities to
discrimination on the basis of their disability, preventing them from obtaining a driver license in
violation of 28 C.F.R. §35.130(b)(3)(i).

1020211

### 1.      TEA has authority to provide access to the hearing disabled.

38.      TEA can "adopt and enforce rules necessary" to administer the driver-education program and ensure compliance with all federal laws.  TEX. EDUC. CODE §§1001.053(3), .051, .206(7).  It is fully within that authority to adopt and enforce rules that require the schools to provide disability accommodations.  *Id.* §§1001.053(3).  It is likewise within TEA's authority to deny and/or suspend licenses of noncompliant schools, thus ensuring future compliance.  *Id.* §§1001.454-458; 1001.551, 1001.553.  Moreover, because TEA has developed a written model course it provides to the parents, and minor and adult classroom and in-car course curricula it sends to the schools, it is within the agency's authority to develop a course intended for the hearing-impaired—perhaps a video course in ASL.  Whether it chooses to provide the schools with necessary tools or require them to develop their own accommodations in order to remain licensed, TEA cannot stand idly by.

39.      TEA also may not delegate its affirmative duty to ensure compliance with the ADA to third parties.  "A public entity may not, directly or through contractual, licensing, or other arrangements" discriminate against individuals on the basis of disability.  28 C.F.R. §35.130(b)(1).  In addition, it "may not directly or through contractual or other arrangements, utilize criteria or methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability." *Id.* §35.130(b)(3)(i).  By hiding behind its licensees' responsibility to comply with the ADA and ignoring its own independent obligation to ensure access and compliance, TEA discriminates against people with disabilities like Plaintiffs.

40.      TEA's argument that it has no obligation, separate from the driving schools, not to discriminate against people with hearing disabilities is contrary to settled precedent.  Because

TEA's role in administering the driver-education program goes beyond merely issuing licenses, TEA has an obligation under Title II of the ADA.  TEX. EDUC. CODE §§1001.053(3), .206(7); *see Winborne*, 677 S.E.2d at 307 (holding that agency has ADA compliance obligation independent from that of its licensees).

> ### 2.   TEA can redress Plaintiffs' injuries through regulations, agency programs, or inter-agency initiatives.

41.   TEA regulations mandating interpreters or other aids for people with hearing disabilities are reasonable accommodations that would not fundamentally alter the nature of TEA's programs and services.   Were it to adopt such regulations, TEA could exercise its "enforcement authority to either compel the school to come into compliance or remove a non-compliant school's ability to operate," as it already does with all other driver education regulations — no DOJ involvement necessary.  *See* Exhibit 2, Letter from Victor Alegria.  Such action is within TEA's authority and would not cause it an undue burden.[3]  Moreover, TEA can also fulfill its duty by coordinating voluntary measures with the driving schools, developing its own course materials, media, and other auxiliary aids for the deaf, adapting its requirements for driver-education instructors to encourage certification of instructors fluent in ASL, and/or coordinating with other state agencies like the Department of Assistive and Rehabilitative Services to ensure suitable accommodation.  *See* TEX. EDUC. CODE §§1001.101, .1015.251-.257, .104-.110.  Any of the above acts could redress Plaintiffs' injuries if ordered by this Court.

42.   If it were not for TEA's involvement in the driver-education program, including course approval, creation of model course materials, school and instructor licensure, issuance of

---

[3] TEA has issued 51 pages of regulations implementing Chapter 1001 of the Texas Education Code and exercising control over driver education (*see* 19 TAC §§176.1001-1020, available at http://ritter.tea.state.tx.us/rules/tac/chapter176/ch176aa.html, last visited September 16, 2013). As its own regulations demonstrate, TEA has authority to make suitable provisions for reasonable accommodation of the hearing-disabled individuals.

course-completion certificates, and monitoring of providers, Texans would not have access to state-approved driver education; and, as a result, Texans under the age of twenty-five would not be able to get driver licenses. TEX. TRANSP. CODE §§521.142(d), 521.1601. The driver-education program is state-created and state-managed, and the state must provide accommodations. As the administrator of the driver-education program, TEA may not adopt policies that have the effect of denying access on the basis of disability. *See Winborne*, 677 S.E.2d at 306-07.

43.     TEA already requires its driving schools to sign an affidavit to comply with all federal regulations, including the obligation not to discriminate on the basis of disability. Exhibit 4, Driver Education School License Application, p. 4, part G. Yet it refuses to enforce it or issue formal regulations that would make schools show evidence of ADA compliance prior to licensing. In fact, TEA does not even inform the individual schools of their ADA obligations during the licensing and license renewal process. *See* Exhibit 5, Affidavit of Robert Reyna. Because of TEA's failure to act, the driving schools refused to provide Plaintiffs with interpreters. Despite its knowledge of that fact, TEA declined to do anything to require the schools to accommodate Ms. Ivy, the Gonzalez twins, Mr. Prosper, and Ms. Doe, or to independently ensure they receive accommodations.

44.     This refusal is an abdication of TEA's statutory mandate to manage the driver-education program and a violation of its obligations under the ADA. TEA must provide accessible driver education, and may not delegate its obligations to its licensees. *See* 28 C.F.R. §35.130(b)(3)(i). Every year, TEA ensures access to approved driver courses for thousands of Texans, but steadfastly refuses to provide the same crucial service to those with hearing disabilities. This has to stop.

(2)   <u>Violations of Section 504 of the Rehabilitation Act.</u>

45.    Under the Rehabilitation Act, "No [person] shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving federal funding assistance." 29 U.S.C. §794(a).

46.    It is undisputed that TEA is a recipient of federal funds.

47.    For all the reasons stated above regarding TEA's course of conduct, Ms. Ivy, the Gonzalez twins, Mr. Prosper and Ms. Doe further allege a cause of action under the Rehabilitation Act against TEA.[4]

48.    TEA is in violation of the Rehabilitation Act because it has subjected Plaintiffs and others similarly situated to discrimination on the basis of their disabilities, as set out above.

## VIII.  RELIEF REQUESTED

<u>Injunctive Relief</u>

49.    Because of Defendant's refusal to comply with the ADA and Section 504 of the Rehabilitation Act, injunctive relief is necessary so that Plaintiffs and others similarly situated can have equal access to TEA's driver-education program provided by TEA and the services provided by licensed driving schools, as required by law.

<u>Declaratory Relief</u>

50.    Plaintiffs and others similarly situated are entitled to declaratory judgment concerning each of Defendant's violations of law, specifying the rights of individuals with

---

[4] The ADA and Section 504 are applied alike.  *See Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 455 (5th Cir. 2005).

disabilities to access the services available through TEA's driver-education program, at TEA-licensed driving schools, and in the issuance of TEA certificates.

Attorneys' Fees and Costs

51.     Plaintiffs are entitled to reasonable attorneys' fees, litigation costs, and court costs, pursuant to the ADA, 42 U.S.C. §§12205, and the Rehabilitation Act, 29 U.S.C. §794a.

**PRAYER FOR RELIEF**

THEREFORE, Plaintiffs respectfully request that this Court:

52.     Issue an order certifying this action pursuant to Fed. R. Civ. P. 23(a) and (b)(1)-(b)(2) as a class action;

53.     Enter declaratory judgment that Defendant Williams in his official capacity, and all persons acting in concert with TEA bear an independent responsibility under federal disability law to effect policies and procedures providing for access to driver education courses to people with disabilities;

54.     Enter declaratory judgment that Defendant's discrimination in the past has prevented Plaintiffs and those similarly situated from fully accessing the programs and services provided by TEA and TEA-licensed driving schools, in violation of the ADA and the Rehabilitation Act;

55.     Issue a permanent injunction, requiring Defendant Williams in his official capacity, and all persons acting in concert with TEA, to cease all discrimination and eliminate all barriers to accessibility that prevent the class, including the Plaintiffs, and others similarly situated, from having access to driver education and certificates provided by TEA through TEA-licensed driver education schools;

26

56. Issue a permanent injunction requiring TEA to establish effective policies and programs providing for access for people with hearing disabilities through qualified interpreters, regulations, course materials, joint efforts with other state agencies, or as otherwise appropriate to ensure that hearing disabled individuals who must complete a certified driver education course have access to such courses, and to enforce such policies and programs with licensed driver education schools;

57. Find that Plaintiffs are the prevailing parties in this action, and order Defendant to pay their attorneys' fees, costs, and litigation expenses; and,

58. Grant such other and additional relief to which Plaintiffs may be entitled.

Dated:   September 16, 2013.

Respectfully submitted,

/s/ Olga Kobzar

Joe T. Sanders II
Texas Bar No. 24044930
Olga Kobzar
State Bar No. 24074543

SCOTT, DOUGLASS & McCONNICO, L.L.P.
600 Congress Avenue, Suite 1500
Austin, Texas  78701-2589
(512) 495-6300
(512) 474-0731 Fax

CO-COUNSEL FOR PLAINTIFFS and CLASS COUNSEL

Joseph P. Berra
State Bar No. 24027144
James C. Harrington
Texas Bar No. 09048500
Wayne Krause
State Bar No. 24032644

27

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, Texas 78741-3438
(512) 474-5073 (phone)
(512) 474-0726 (fax)

CO-COUNSEL FOR PLAINTIFFS


CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing has been served on counsel of record for Defendant Williams through the Electronic Case Files System of the Western District of Texas on September 16, 2013.

/s/ Olga Kobzar

28