UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DONNIKA IVY, BERNARDO GONZALEZ, ERASMO GONZALEZ, ARTHUR PROSPER IV, and TYLER DAVIS as next friend of JUANA DOE, A MINOR, | § § § § § | |
| Plaintiffs, | § | CIVIL ACTION NO. A-11-CA-660 LY |
| v. | § § | |
| COMMISSIONER MICHAEL WILLIAMS, in his official capacity, as head of TEXAS EDUCATION AGENCY, | § § § § | |
| Defendant. | § § | |

**PLAINTIFFS' RESPONSE TO DEFENDANT COMMISSIONER ROBERT WILLIAMS'S FOURTH AMENDED MOTION TO DISMISS AND, IN THE ALTERNATIVE, FOR CERTIFICATION UNDER 12 U.S.C. §1292 (b)**

Plaintiffs Donnika Ivy, Bernardo Gonzalez, Erasmo Gonzalez, Arthur Prosper IV, and Tyler Davis as next friend of Juana Doe, a minor (collectively, the "Plaintiffs"), on behalf of themselves and a class of all other persons similarly situated, file this response to Defendant Michael Williams' Fourth Amended Motion to Dismiss.

## I. STATEMENT OF CASE

This is a disabilities discrimination case brought by deaf individuals who seek to access the driver-education program designed and managed by the Texas Education Agency ("TEA"). After numerous unsuccessful attempts to obtain equal access to the program, Plaintiffs sued Defendant Michael Williams, in his official capacity as head of the TEA, challenging TEA's failure to provide them reasonable accommodations to complete the driver-education courses required to obtain a Texas driver license. The Court has previously denied TEA's Second Amended Motion to Dismiss as to the majority of the arguments, and granted it as to Ms. Velasquez' claims on behalf of Bernardo and Erasmo Gonzalez, ruling that she had not shown

1033350

injury since the parent-taught course was in theory available to her boys.[1] Plaintiffs have subsequently filed Third and Fourth Amended Complaints, bringing this case as a class action on behalf of all others similarly situated. TEA has now filed its Fourth Amended Motion to Dismiss. For the reasons set forth below, TEA's Motion should be denied in its entirety.

## II. GROUNDS FOR DENIAL

1.      Plaintiffs have standing to assert their claims. First, Plaintiffs demonstrated their injury by stating they are unable to complete mandatory driver-education courses available to the hearing Texans. Second, Plaintiffs' injuries result from TEA's failure to comply with its duty to accommodate hearing-disabled individuals under Section 504 of the Rehabilitation Act ("Section 504") and Title II of the ADA ("Title II" or "ADA"), providing a causal link between the injuries and TEA's conduct. Third, Plaintiffs have pled that TEA can (and should) redress their injuries by, among other things, enacting regulations, developing appropriate course materials, and coordinating with other state agencies.

2.      Plaintiffs stated valid claims upon which relief may be granted under both Section 504 and Title II because TEA has an independent obligation not to discriminate against Plaintiffs in its operations and administration of the driver-education program.

3.      TEA's request to certify an interlocutory appeal, as framed in TEA's Motion, should be denied because the legal question it seeks to certify will not advance this litigation.

## III. STANDARD OF REVIEW

Defendant must carry an extraordinary burden to prevail on his rule 12(c) motion for judgment on the pleadings, which is subject to the strict standard applied to rule 12(b)(6) motions. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 330 n.

---

[1] Because the twins turned eighteen between the filing of this action and the Court's ruling, they subsequently joined the suit as named plaintiffs.

8 (5th Cir. 2002) ("Rule 12(b)(6) decisions appropriately guide the application of Rule 12(c) because the standards for deciding motions under both rules are the same"). Rule 12(c) permits a judgment on pleadings alone, which include the complaint, the answer, and any written instruments attached as exhibits. *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452–53 (7th Cir.1998). When reviewing the 12(c) motion, the court construes the complaint in the light most favorable to the nonmoving party and should grant it "only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Id.* at 452. Likewise, a 12(b)(6) "motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (1982). Courts are reluctant to dismiss suits based solely on the pleadings, "in view of the policy of the federal rules to determine actions on their merits." *State of Texas v. American Tobacco Co.*, 14 F. Supp. 2d 956, 961 (E.D. Tex. 1997). Finally, a 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of a claim that would entitle plaintiff to relief. *Ramming v. United States*, 281, F.3d 158, 161 (5th Cir. 2001) (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)). Under FED. R. CIV. P. 12(b)(1), the court accepts as true all factual allegations in the complaint and must draw all reasonable inferences in favor of plaintiff. *Lunney v. United States*, 319 F.3d 550, 554 (2nd Cir. 2003).

## IV. ARGUMENT AND AUTHORITIES

### A. TEA's motion should be denied because Plaintiffs have standing to bring their claims.

TEA argues that Plaintiffs cannot show that their injury was caused by TEA's practices and policies. The agency also says that the requested relief is beyond its power and thus beyond

3

this Court's jurisdiction to order. Both assertions are incorrect. Plaintiffs plead an injury-in-fact by stating that their injuries result from inability to access the driver-education program mandated by state law. TEA is the agency that created and continues to manage this program in Texas, and TEA issues course-completion certificates program graduates need to obtain a Texas driver license.[2] Although the classes themselves are taught by TEA-licensed private schools, TEA policies and procedures are at the heart of Plaintiffs' injuries and their resolution. As the agency appointed to design the driver-education program for the public's benefit, TEA failed to make accommodations for the deaf a part of its requirements. This failure is the reason the program is currently inaccessible to Plaintiffs and those similarly situated.

1.     Plaintiffs pled sufficient facts to show particularized injury.

Plaintiffs have shown injury as the result of TEA's inadequate design and management of the driver-education program and TEA's refusal to accommodate their needs. *See Equal Rights Ctr. v. Dist. of Columbia*, 741 F. Supp. 2d 273, 278, 286-88 (D.D.C. 2010) (holding that to "survive the Motion to Dismiss, Plaintiffs need allege only that they have suffered actual injury resulting from the claimed inaccessibility"). Plaintiff Tyler Davis, who sued on behalf of the minor plaintiff Juana Doe, has pled that Juana is estranged from her parents, who are not willing to instruct her in the parent-taught course for minors. Complaint at ¶ 8. She is also unable to complete the classroom portion of the course without adequate aids or services or a course specifically designed for people with hearing disabilities, and unable to locate schools willing to offer those accommodations. *Id.* Plaintiffs Donnika Ivy, Bernardo and Erasmo Gonzalez, and Arthur Prosper IV pled that they called multiple driving schools, which all refused to

---

[2] Plaintiffs' injury as it relates to TEA is not the inability to obtain licenses. While TEA's inaction is ultimately the direct cause for Plaintiffs' license ineligibility, their injury here is based on lack of equal access to the driver-education courses and TEA's failure to ensure accommodations for the deaf individuals. TEA's Eleventh Amendment immunity challenge on this ground is inapplicable.

1033350

accommodate their disabilities. Complaint at ¶¶ 4-7. TEA has done nothing to ensure them equal access to driver-education courses. *See* Complaint at ¶¶ 9, 32-48. All Plaintiffs stressed that TEA's refusal to "adopt and enforce the rules necessary" to ensure compliance with the ADA and Section 504 caused their injury—their inability to access TEA-managed driver-education courses and acquire TEA-issued course-completion certificates. *Id.*; Tex. Educ. Code §§ 1001.053(3); 1001.055.

        2.    <u>Plaintiffs' injuries are traceable to TEA's failures.</u>

TEA seemingly confuses its own obligation to act under Title II of the ADA and the driving schools' obligations under Title III. It is true that Plaintiffs can sue individual schools under Title III. In fact, Ms. Ivy had filed (and settled) a Title III claim against the school that denied her accommodations. *See* Ex. 5 to Complaint. But Plaintiffs' ability to sue individual schools that denied them service has no bearing on their right to demand that TEA design and operate its program in full compliance with Title II and Section 504. *See, e.g.*, *Equal Rights Ctr.*, 741 F. Supp. at 278, 286-88 (deciding whether D.C. Lottery Board's policy to "inspect a potential licensee's accessibility as part of the licensing process" had done enough to meet the agency's Title II and Section 504 duties).

Although Plaintiffs (and all members of their proposed class) could file individual lawsuits against schools that refused to provide them with interpreters, there is no statutory requirement that they *must* sue the schools before they can sue the agency responsible for the program's design. It is irrational to suggest that justice would be better served if the courts were flooded with individual suits over access to driver-education courses, rather than one lawsuit seeking to compel the creator of the program to develop policies that ensure equal access.

As discussed in detail below, driver education is a TEA program or activity because TEA manages the driver-education schools, sets minimum curriculum standards, and is the only

agency that can issue course-completion certificates delivered by the schools to their graduates.[3] TEX. EDUC. CODE ANN. § 1001.055. Yet TEA refuses to make this program accessible to the deaf. While TEA is correct that Plaintiffs are injured by the individual schools' refusal to provide them with interpreters, that refusal comes from the schools' lack of awareness of their duty to accommodate and from TEA's failure to educate the schools or require evidence of accommodations prior to licensure. *See* Ex. 5 to Complaint.

Plaintiffs are likewise injured by TEA's failure to design comprehensive program guidelines that incorporate the need for disability accommodations into all of its written guidelines and materials, or adopt curriculum accessible to the deaf. The practice Plaintiffs seek to correct—failure to provide ASL accommodations—is the result of TEA's licensing guidelines that fail to require proof of compliance. *See Equal Rights Ctr.*, 741 F. Supp. at 278 (describing a licensing process where applications from non-compliant businesses are put on hold "until those businesses remove specified barriers" to access); *Noel v. New York City Taxi & Limousine Comm'n (TLC)*, 687 F.3d 63, 69 (2d Cir. 2012) (stating that the licensing entity may be liable under Title II if "private industry practice results from licensing requirements"). TEA has both the authority and the obligation to redress Plaintiffs' injury, and its refusal to act is the reason Plaintiffs cannot access TEA-supervised driver-education courses and obtain their course-completion certificates.

      3.    <u>Plaintiffs have shown their injuries are redressable.</u>

Plaintiffs are not demanding an order directing TEA "to exercise its enforcement authority in a particular manner." Motion at 5. Rather, they seek a declaration that TEA has an

---

[3] TEA's argument that the schools and not TEA "issue" the certificates is incorrect. TEA generates the unique certificate numbers and/or prints the blank certificates, sells them to the schools, and the schools then distribute TEA-issued certificates to their students. The same piece of paper (or, in cases where only the certificate number is generated, the same unique number) transfers from TEA to the driver-education schools' students. As with the state-created lottery tickets, TEA is the issuer of the certificates and its licensees are the distributors.

1033350

affirmative duty to provide Plaintiffs with equal access to the driver-education program. The exact means of compliance are up to TEA. The agency is authorized to "adopt and enforce rules necessary" to administer the driver-education program and ensure compliance with all federal laws. TEX. EDUC. CODE §§1001.053(3), .051, .206(7). That authority includes the power to require the schools to provide disability accommodations. *See id.* §1001.053(3).[4] TEA also can deny or suspend licenses of noncompliant schools. *Id.* §§1001.454-458, .551, .553. Nothing in the statute prevents TEA from ensuring that its regulations, standards, curriculum, and materials are accessible to the hearing-disabled.

According to TEA, it cannot compel driver-education schools to come into compliance because it has "no police power or ability to issue judicial decrees." Motion at 4. But Plaintiffs do not suggest that the only remedy is for TEA to investigate individual driving schools, make findings about their ADA compliance, and revoke licenses of non-compliant schools. Rather than conduct independent investigations, TEA could simply require the schools to include proof of ADA compliance in their initial license application and each subsequent renewal. *See Equal Rights Ctr.*, 741 F. Supp. at 278. If a school fails to show that it has procedures in place to accommodate the hearing-disabled, TEA would deny its application. *See id.*; TEX. EDUC. CODE §1001.206(7) ("The commissioner shall approve an application for a course provider license if *on investigation* the agency determines that . . . the course provider complies with *all* county, municipal, state, and federal laws") (emphasis added). TEA cannot argue that such actions are not within its authority, since it is expressly authorized to ensure compliance with state and

---

[4] TEA-developed public driver-education program regulations require that all practice vehicles for disabled students, including those provided by the State, "be equipped with all applicable mechanical devices and/or other modifications or accommodations determined to be necessary and appropriate based on evaluation data." 19 TEX. ADMIN. CODE §75.1010(a)(7). Although the companion private driver-education regulations do not require TEA to determine what accommodations are appropriate, comparing the two shows that TEA has the authority to require necessary accommodations. *Cf. id. with* 19 TEX. ADMIN. CODE §176.1014(a). For example, in-car driving instructors can be trained in simple hand signals for working with student drivers who are deaf, without having to learn ASL. Course materials and media can also be developed specifically with accommodating the hearing-impaired in mind.

federal laws. *Id.* There is also little doubt that once the schools are told that they will not get licenses without proof of ASL-based accommodations, they are likely to make every reasonable effort to comply. TEA's argument that its refusal to license non-compliant schools is not likely to redress Plaintiffs' injuries fails. *See* Motion at 7-8.

And if TEA truly believes that all of Texas driver-education schools would rather shut their doors than develop accommodations, it is even more crucial for the agency to make it easier for the schools (or TEA itself) to accommodate the deaf community. For example, TEA could design an ASL driver-education video course using the parent-taught course packet and license it to individual schools, institute instructor-training programs in ASL, or join forces with other state agencies that provide services for the deaf. All of these actions are within TEA's authority to set the curriculum and coordinate efforts with other state agencies, including the Texas Department of Public Safety (TEX. EDUC. CODE §§1001.107, 1001.110), Texas Rehabilitation Commission (*Id.* §1001.104), and Texas Department of Health (*Id.* §1001.108). None of the above measures require TEA to offer driver-education services to the public, an action over which it purports to lack authority.[5] Because any of these and a number of other measures will improve Plaintiffs' access to the program, Plaintiffs have shown redressability. *See Equal Rights Ctr.*, 741 F. Supp. at 282 (holding that plaintiffs' redressability burden is met by pleading that a "program with greater accessibility . . . would 'significantly'—not completely—redress their injuries") (citing *Int'l Ladies' Garment Workers' Union v. Donovan*, 722 F.2d 795, 812 n. 27 (D.C. Cir. 1983).

---

[5] Plaintiffs note that despite TEA's claims, it currently provides a complete parent-taught course directly to the parents. If TEA were to create a parent-taught course in ASL and make it available to parents and schools to administer to their deaf students, it would redress the Plaintiffs' injuries.

8

    4.    <u>TEA is obligated to grant Plaintiffs access to the course-completion certificates.</u>

TEA generates the course-completion certificates, sells them to the schools, and collects funds to finance the driver-education program. The schools then deliver the certificates to the individuals who complete their courses. Because TEA issues the certificates to be used by the public, it must comply with state and federal disability laws to ensure the public's access to them. It can do so through licensing requirements, providing schools with course materials, media, and other auxiliary aids for the deaf, or coordinating with other state agencies to ensure suitable accommodations. *See* TEX. EDUC. CODE §§1001.101, .1015.251-.257, .104-.110.

At this point, Plaintiffs have pled sufficient facts to show that they have been injured, and that TEA is able to redress their injuries. Plaintiffs will show, after sufficient discovery, that it is feasible for TEA to provide reasonable accommodations for hearing-impaired individuals and that a variety of aids and services can accomplish this goal. Thus, Plaintiffs have met their burden and this Court should deny TEA's Motion. *See Lujan*, 504 U.S. at 560; *Equal Rights Ctr.*, 741 F. Supp. at 281-83.

**B.**    **Plaintiffs have stated valid claims upon which relief may be granted.**

    1.    <u>The schools' licensee status is irrelevant because driver education is a state program</u>.

TEA contends that Plaintiffs have failed to state a claim because TEA's authority over driver education, including its activities in developing program requirements, curriculum, instructor programs, licensing, supervising and regulating driver-education courses, and issuing course-completion certificates does not amount to "services, programs, or activities" of the agency for purposes of Section 504 and Title II. 29 U.S.C. §§794(a)-(b); 42 U.S.C. §12132; *see* Motion at 15. It relies on a line of cases holding that state agencies that license self-regulated businesses are not required to compel them to comply with the ADA. Motion at 9-10 (citing

1033350

*Tyler v. City of Manhattan*, 849 F. Supp. 1429 (D. Kan. 1994); *Reeves v. Queen City Transp.*, 10 F. Supp. 2d 1181 (D. Colo. 1998)); Motion at 13 (citing *Noel*, 687 F.3d at 69).

But TEA's role in administering the driver education program goes beyond licensing—it sets the curriculum requirements for the entire program, enacts regulations, enforces them, and generates course-completion certificates. It even provides a model curriculum for the parent-taught course that is sufficient to fulfill all driver-education course requirements.[6] Unlike self-directed private industries, TEA regulations guide the schools in the design and structure of the very product offered to the public. Thus, TEA has a very different obligation under Title II because the driver-education program is a "service, program, or activity" of the TEA. *See Winborne v. Virginia Lottery*, 677 S.E.2d 304, 307 (Va. 2009) (holding that agency in charge of the state-created lottery program has ADA compliance obligations independent from that of its licensees); *see also Equal Rights Ctr.*, 741 F. Supp. at 281-83 (denying D.C. Lottery Board's motion to dismiss because plaintiffs have sufficiently pled that the licensing agency's actions have led to their injuries and that the agency is able to redress those injuries by program modifications).

In effect, the legislative scheme to create mandatory driver-education courses for 16-25 year olds in Texas begins and ends with TEA: (1) TEA develops the standards for driver-education schools, courses and instructors, (2) licenses and supervises them, (3) issues course-completion certificates, and (4) delivers them to the schools for distribution to the students. Unlike most self-directed private businesses, driver-education schools rely on TEA for instructions on the content of their *ultimate product*, and TEA develops those requirements based on its legislative mandate.

---

[6] In fact, nothing would prevent a school from ordering a parent-taught course packet from TEA, and using it to conduct its driver-education courses—no modifications or additions necessary.

1033350

a.    In Texas, driver education is mandated by the state and is thus akin to the lottery cases.

The cases cited by TEA do not address state-mandated programs, as this case does. *See Tyler*, 849 F. Supp. at 1441-42 (licensing of liquor stores); *Reeves*, 10 F. Supp. 2d at 1186 (licensing of buses between city and various ski and gambling resorts); *Noel*, 687 F.3d at 69 (licensing of taxi cabs). In *Tyler*, the court held that restaurants and liquor stores that received state liquor licenses did not qualify as "services, programs, or activities of a public entity" under Title II because the state did not contract with the stores and restaurants to provide those services. 849 F. Supp. at 1441-42. In *Reeves*, another court held that a certificate of public necessity issued to a private company providing transportation to and from gambling facilities did not provide the basis for suing the state Public Utilities Commission. 10 F. Supp. 2d at 1184. The court held that PUC's primary function was licensing and registration, not transportation services. *Id.* In *Noel*, the court held that a municipal taxi licensing program did not create an obligation to ensure ADA compliance by the taxi operators. 687 F.3d at 69.

The authority of the agencies in all three cases was limited to licensing private businesses as a part of the agencies' overall regulatory functions. None of those businesses operated in an industry created by the state legislature. *Id.* Unlike those cases, the Texas driver-education program begins and ends with a state action. It was created by the Legislature for driver license applicants ages 16-25, who complete it through their receipt of a TEA-issued course-completion certificate. *See* TEX. EDUC. CODE §§1001.053(3), .051, .206(7). Requiring TEA to ensure equal access under this state program would not in any way affect the regulation of "barber, cosmetology or real estate broker programs" that were not created by the legislature for the benefit of the public. *See* Motion at 11 n. 11.

1033350

TEA's authority is radically different from agencies in the private transportation cases or the liquor license cases and directly analogous to the state-run lottery cases. Complaint ¶¶ 28-35; *see Winborne*, 677 S.E.2d at 307; *Equal Rights Ctr.*, 741 F. Supp. at 278, 281-83. The state action, not the degree of control over the licensees, is the critical difference. As with the lottery cases, the Texas Legislature created the driver-education program and required TEA to administer it. *See Winborne*, 677 S.E.2d at 307. The ultimate product delivered by licensees to the state citizens, be it a lottery ticket or a course-completion certificate, comes from the state agency administering the program. *See id.* TEA, like the schools, has an independent obligation to comply with the disability laws.

*Noel*, a case TEA argues to be directly applicable, is no more persuasive than the liquor and bus licensing cases, and perhaps less so because the Second Circuit specifically noted that the taxi industry is *expressly exempt* from Title III liability under the ADA. *Noel*, 687 F.3d at 74 (citing 49 C.F.R. §37.29(b)). To require the licensing agency to compel the taxi industry to create more accessible taxis, when the individual operators themselves are exempt from such requirement, would go against the statutory scheme—a key distinction from the Plaintiffs' facts. *Id.* While the Taxi and Limousine Commission's failure to act when its licensees had no ADA obligations may not be actionable, TEA's refusal to address known instances of disability discrimination is an overt violation of the Plaintiffs' right of equal access. Moreover, the Second Circuit did not disagree with the result reached in the lottery cases, remarking instead that its facts were "a closer analog to *Reeves* and *Tyler*, in which the public entity is merely the entity charged with regulating and licensing the private industry." *Id.* at 72.

The same cannot be said about TEA's involvement with driver education. TEA designs the driver-education program's minimum requirements and curriculum, demands adequate space,

materials, and instructors for the courses, is authorized to ensure compliance with state and federal law upon investigation, certifies the schools and instructors who make it available to the public, and issues course completion certificates. *See* TEX. EDUC. CODE §1001 *et al.* Further, Section 504, which courts routinely use to interpret ADA regulations, defines a program or activity of a state agency as "all of the operations of a . . . department, agency, special purpose district, or other instrumentality of a State or of a local government." 29 U.S.C. § 794(b). Activities related to the driver-education program and supervision of individual schools are part of TEA's daily operations, and thus qualify as a programs, services or activities for which TEA is responsible under both Section 504 and Title II. *See* 42 U.S.C. § 12132.

> 2.   A licensing arrangement does not absolve TEA of responsibility for its own actions.

TEA also argues that the definition of "program or activity" receiving federal financial assistance under Section 504 could not possibly extend to "mere licensees of a state agency." Motion at 19. To support this argument, TEA relies on 28 C.F.R. § 41.3(d), which provides that a recipient of federal assistance for purposes of Section 504 includes "any State or its political subdivision, any instrumentality of a State or its political subdivision, any public or private agency, institution, organization, or other entity, or any person to which Federal financial assistance is extended . . . excluding the ultimate beneficiary of the assistance." 28 C.F.R. § 41.3(d). Thus, TEA argues, a licensee's programs and activities are separate from the agency's obligation under Section 504. Motion at 19.

But 28 C.F.R. 41.51(b)(1) states that a recipient of federal financial assistance like TEA, "in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of handicap . . . deny a qualified handicapped person the opportunity to participate in or benefit from the aid, benefit, or service." That benefit or service

is not limited to those who seek licenses. TEA's services, programs, and activities relating to driver education run to the individuals like Plaintiffs who must obtain driver-education course-completion certificates to receive their licenses.[7]

In the context of Plaintiffs' claims against TEA, a "program or activity" under Section 504 involves TEA's own operations in administering and supervising the driver-education program, including licensing, regulating, and monitoring driving schools and issuing course-completion certificates. *See* 29 U.S.C. § 794(a). By refusing to accommodate Plaintiffs' disabilities, to require its licensees to accommodate those disabilities, and to otherwise accommodate the hearing-impaired individuals in TEA's driver-education program, TEA violated the requirement that no disabled individual "be denied the benefits of, or be subjected to discrimination under" agency operations so long as the agency receives federal assistance. *Id.*; *see also* 28 C.F.R. §§ 41.3(d); 41.51(b)(1).

### 3.   TEA conducts its own driver-education activities and is required to make them accessible to the public.

In all actions related to driver education, TEA is performing its core function—developing educational requirements that schools and instructors must meet before they offer their courses to the public, and issuing course-completion certificates for the graduates. TEA's role, as anticipated by the Legislature, goes far beyond licensing. The agency cannot delegate its obligations, and thus bears an independent responsibility to afford Plaintiffs equal access under Title II and Section 504. *See* 28 C.F.R. 41.51(b)(1).

---

[7] Although Plaintiffs seek to complete the driver-education courses to ultimately become eligible for driver licenses, TEA's immunity argument based on lack of control over license issuance is off base. *See* Motion at 18-19. This lawsuit concerns equal access to mandatory driver-education courses—an injury with a direct causal connection to Defendant Williams' actions in his official capacity.

1033350

Plaintiffs have pled sufficient facts to show that TEA's operations failed to fulfill the agency's obligation to accommodate Plaintiffs' disabilities. *See* Fourth Amended Complaint at ¶¶ 24-48. TEA's Motion should be denied. *See American Tobacco Co.*, 14 F. Supp. 2d at 961.

    **C.**    **As currently worded, TEA's request for interlocutory appeal should be denied because the proposed question will not resolve this litigation.**

Anticipating denial of its Motion, TEA also requests certification of a discretionary interlocutory appeal to the Fifth Circuit, but its request fails to satisfy the § 1292(b) three-part test. For certification to be proper, the jurisdictional issue must meet the following requirements: (1) the issue of law must be controlling; (2) that issue must be the subject of a substantial ground for a difference of opinion; and (3) an immediate appeal from the order must materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292 (b); *Garner v. Wolfinbarger*, 433 F.2d 117, 118 (5th Cir. 1970).

TEA's proposed question fails all three prongs of that test. TEA seeks to certify the question of whether "a Texas state agency's licensing of private entities subject that state entity to liability under the ADA for the activities of the private licensee." Motion at 20. While TEA's framing is designed to make a negative response more likely, its proposed question will not advance this litigation in the least.

The issue at the heart of this litigation is whether TEA has the obligation to make sure that the mandatory program it was legislatively appointed to design and supervise is ADA- and Rehabilitation Act-compliant. The key question is not TEA's liability for the actions of its licensees, but TEA's liability for the program it created, and whether TEA's extensive and continuous involvement in the administration of the program makes it a "service, program, or activity" of TEA. Because TEA did not request certification of that issue, this Court should deny its request.

## V. CONCLUSION

The Rehabilitation Act of 1973 and the Americans with Disabilities Act of 1990 were enacted to protect individuals like Plaintiffs from disability discrimination by private actors and public entities alike. Decades later, TEA attempts to wordsmith these Acts to deny its independent obligation to ensure that hearing disabled individuals in Texas gain access to mandatory driver-education courses. Bottom line is, TEA created the driver-education program requirements for the benefit of all Texans, including the hearing disabled. By failing to ensure that its program is accessible to the deaf community, TEA has failed to comply with Title II.

TEA's interpretation of federal law is contrary to the letter and the spirit of both Acts. Plaintiffs pled that they have standing to sue over their inability to take driver-education courses and alleged sufficient facts to show that TEA is likely to redress their injuries. Plaintiffs also brought valid claims against TEA based on its independent obligation to accommodate disabled individuals under Title II and Section 504. Plaintiffs have thus established that this Court has jurisdiction over their claims and are ready to proceed with litigation and a trial on the merits.

## VI. RELIEF REQUESTED

Plaintiffs respectfully request that Defendant Williams' Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(c), 12(b)(1), and Rule 12(b)(6) be denied in its entirety, and that Plaintiffs be awarded all other legal or equitable relief to which they are entitled. Plaintiffs further request that this Court deny Defendant's Motion for Certification Under 12 U.S.C. §1292(b).

Respectfully submitted,

/s/ Joe T. Sanders II

16

1033350

Joe T. Sanders II
Texas Bar No. 24044930
Olga Kobzar
State Bar No. 24074543

SCOTT, DOUGLASS & McCONNICO, L.L.P.
600 Congress Avenue, Suite 1500
Austin, Texas 78701-2589
(512) 495-6300
(512) 474-0731 Fax
CO-COUNSEL FOR PLAINTIFFS

Joseph P. Berra
State Bar No. 24027144
James C. Harrington
Texas Bar No. 09048500
Wayne Krause Yang
State Bar No. 24032644

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, Texas 78741-3438
(512) 474-5073 (phone)
(512) 474-0726 (fax)
CO-COUNSEL FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing has been served on counsel of record for Defendant Williams through the Electronic Case Files System of the Western District of Texas on October 28, 2013.

/s/ Joe T. Sanders

17

1033350