IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DONNIKA IVY, <br> BERNARDO GONZALEZ, <br> ERASMO GONZALEZ, ARTHUR <br> PROSPER IV, AND TYLER DAVIS <br> AS NEXT FRIEND OF JUANA DOE, <br> A MINOR, <br> PLAINTIFFS, <br><br> V. <br><br> MICHAEL WILLIAMS, <br> COMMISSIONER, IN HIS OFFICIAL <br> CAPACITY, AS HEAD OF TEXAS <br> EDUCATION AGENCY, <br> DEFENDANT. | § § § § § § § § § § § § § § § § | CAUSE NO. A-11-CA-660-LY |

## ORDER

Before the court in the above styled and numbered cause are Defendant Texas Education Agency Commissioner Michael Williams's ("Agency") Fourth Amended Motion to Dismiss and, In the Alternative, For Certification Under 12 U.S.C. § 1292(b) filed October 7, 2013 (Clerk's Document No. 78), Plaintiffs' response filed October 28, 2013 (Clerk's Document No. 79), and the Agency's reply filed November 12, 2013 (Clerk's Document No. 81). Having considered the motion, response, reply, the case file, and the applicable law, the court will deny the Agency's motion and will certify this order for interlocutory appeal to the Court of Appeals for the Fifth Circuit.

By this action, Plaintiffs, on behalf of themselves and a class of others similarly situated, allege they are being discriminated against based on their hearing disability and that they are being improperly denied access to the State of Texas's mandatory driver-education program, which is designed and managed by the Agency. Plaintiffs specifically allege that the Agency, by failing to

provide accommodations for hearing-impaired individuals seeking to obtain a first Texas driver's license, is in violation of Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504"). *See* 42 U.S.C. §§ 12131-12134; 29 U.S.C. § 794.

On September 24, 2012, the court rendered an order that granted in part and denied in part the Agency's second amended motion to dismiss. However, that order was rendered moot upon Plaintiffs filing a Fourth Amended Complaint on September 16, 2013. In light of the Plaintiffs' new live pleading, the Agency moves the court again to dismiss the action. The Agency urges several arguments that were fully briefed and orally argued to the court previously, and also presents the court with new arguments.[1] Specifically, the Agency again contends that this action should be dismissed for lack of subject-matter jurisdiction, because Plaintiffs cannot show that they have suffered an injury that is at all redressable by the Agency in the event the court renders a decision favorable to Plaintiffs. *See* Fed. R. Civ. P. 12(b)(1). The Agency also contends that it has Eleventh Amendment immunity from Plaintiffs' claims to the extent Plaintiffs claim their injuries arise from the fact that those under 25 years of age in Texas are required to complete a driver-education course in order to obtain their first driver's license, because the Agency is not charged with the enforcement of this statutory requirement as it is undisputed that the Agency does not issue driver licenses. Additionally, the Agency again contends that Plaintiffs have failed to state a claim for which relief may be granted arguing that (1) the State of Texas through the Agency cannot be held vicariously liable under the ADA for the alleged, unlawful acts of its driver-education school licensees; and (2) the driver-education programs at issue here are not programs of the Agency within the meaning of the ADA or Section 504. *See* Fed. R. Civ. P. 12(b)(6), (c). Finally, should the court render an order

---

[1] On April 20, 2013, the court held a hearing on the previous motion to dismiss.

denying the motion to dismiss, the Agency requests that the court specially certify such order for discretionary interlocutory appeal to the Fifth Circuit. *See* 12 U.S.C. § 1292(b).

**Federal law**

"[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 provides that no qualified individual with a disability, "shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The jurisprudence interpreting the ADA is applicable to Section 504. *See Frame v. City of Arlington*, 657 F.3d 215, 223-24 (5th Cir. 2011).

A "public entity" is broadly defined under federal law as "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1). Although the ADA does not explicitly define "services, programs, or activities," courts broadly construe Title II as covering a variety of community services and programs. *See Frame*, 657 F.3d at 225; *Pennsylvania Dept. of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). Indeed, the operative language of Title II must be read in conjunction with applicable implementing regulations. *See Crandon v. United States*, 494 U.S. 152, 158 (1990). The Congress left to the Attorney General and Department of Justice the task of giving meaning through regulations to the ADA's broad prohibition of discrimination in public services. Therefore, the promulgated regulations that implement Title II must be "given controlling weight unless they are

3

arbitrary, capricious, or manifestly contrary to the statute." *Chevron, U.S.A., Inc. v. Natural Resources Def. Council, Inc.*, 467 U.S. 837, 844 (1984).

Under Title II regulations,

> [a] public entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity.

28 C.F.R. § 35.160(b)(1). The regulations also provide,

> A public entity may not administer a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability, nor may a public entity establish requirements for the programs or activities of licensees or certified entities that subject qualified individuals with disabilities to discrimination on the basis of disability. The programs or activities of entities that are licensed or certified by a public entity are not, themselves, covered by this part.

28 C.F.R. § 35.131(b)(6). Although public-entity services, programs, or activities operated under contractual or licensing arrangements may not discriminate against qualified individuals with disabilities, "the programs or activities of licensees or certified entities are not themselves programs or activities of the public entity merely by virtue of the license or certificate." 28 C.F.R. § 35.131(b)(1), (6); 28 C.F.R. Pt. 35, App.B (reference to paragraph (b)(6)).

**Texas law**

The Texas statutes related to applying for a Texas driver's license were amended effective March 1, 2010. As a result, the Texas Department of Public Safety ("Department") may issue to a person younger than 25 years of age a first driver's license only if the person submits to the

Department an Agency driver-education certificate ("course-completion certificate") that represents the individual has completed and passed an Agency-approved driver-education course. *See* Tex. Transp. Code Ann. § 521.1601 (West Supp. 2012); Tex. Educ. Code Ann. §§ 1001.101(a) (West Supp. 2012); *see also* Tex Educ. Code Ann. § 1001.055 (West Supp. 2012) (course-completion certificates are provided by Agency to driver-education schools or parent-taught course providers that have courses approved by Department and are licensed by Agency). The Department by rule provides for approval of a driver-education course for individuals under age 18, who may obtain the required Agency course-completion certificate by successfully completing an approved parent-taught course conducted by a "parent, stepparent, foster parent, legal guardian, step-grandparent, or grandparent of the person." *See* Tex. Transp. Code Ann. §§ 521.1601, .205 (West Supp. 2012). For individuals age 18 to 25, however, the only option available to obtain the required Agency course-completion certificate is to take an Agency-approved course at an Agency-licensed privately operated driver-education school.

Texas law provides the mechanism by which the Agency licenses and disciplines privately operated driver-education schools and driver's-education course providers. *See* Tex. Educ. Code Ann. §§ 1001.151-.214 (West Supp. 2012). All privately operated driver-education schools must hold a driver-education-school license. *Id.* at §1001.201. The Agency shall approve an application for a driver-education-school license upon the school's meeting several criteria. *See id.* § 1001.204 (requirements for school license). Among the criteria is the requirement that the driver-education school be in compliance with all federal laws. *See id.* at § 1001.204(7). Texas law also authorizes the Agency to require that privately operated driver-education schools employ special policies as conditions to licensure, such as policies related to course cancellation and refund of enrollment fees.

*See id.* §§ 1001.401-.404. Additionally, if a licensed school is found in violation of any requirement under the Texas Education Code, the Agency has authority to take certain disciplinary or enforcement actions. *Id.* at §§ 1001.451-.458. Among the authorized actions are that the Agency may revoke the school's license, place special conditions on the school, subject the school or course provider to peer review, suspend enrollment of the school's students, suspend the school or course provider's right to obtain course-completion certificates, and impose an administrative fine on the school or course provider. *Id.*

**Fourth amended complaint**

Plaintiff Tyler Davis, who brings claims on behalf of the minor plaintiff Juana Doe, pleads that Doe is estranged from her parents, who are not willing to instruct Doe in the parent-taught course for minors. Further Doe is unable to complete the classroom portion of the driver-education course without adequate aids or services or a course specifically designed for people with hearing disabilities and is unable to locate a school willing to offer those accommodations. Plaintiffs Donika Ivy, Bernardo and Erasmo Gonzalez, and Arthur Prosper IV are each at least 18 years old and none are yet 25 years old. Ivy, the Gonzalezes, and Prosper each have called multiple driver-education schools, which all refused to accommodate their hearing disabilities.

Plaintiffs allege that the injury they each suffer from the Agency is not the inability to obtain driver's licenses, "While [the Agency's] inaction is ultimately the direct cause for Plaintiffs' license ineligibility, their injury here is based on lack of equal access to the driver-education courses and [the Agency's] failure to ensure accommodations for the deaf individuals."

Plaintiffs seek (1) a declaratory judgment that the Agency bears an independent responsibility under federal disability law to effect policies and procedures providing for access to driver-education

courses to people with disabilities; (2) declaratory judgment that the Agency's past discrimination denied access in violation of the ADA and the Rehabilitation Act; (3) permanent injunction to cease all discrimination and eliminate all barriers to accessibility of driver education; and (4) permanent injunction requiring the Agency to establish effective policies and programs providing for access for people with hearing disabilities through qualified interpreters and other aids, as appropriate, and to enforce such policies and programs with licensed driver education schools.

**Request to dismiss Plaintiffs' claims for lack of standing**

Federal courts possess jurisdiction over only those disputes that constitute cases or controversies. *Raines v. Byrd*, 521 U.S. 811, 818 (1997). An action is properly dismissed for lack of subject-matter jurisdiction if a court lacks statutory or constitutional power to adjudicate the matter. *See Home Builders Ass'n of Miss. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). For a dispute to be a case or controversy for federal-court jurisdiction, a plaintiff must have suffered an injury in fact, there must be a causal connection between the plaintiff's injury and the conduct complained of, and it must be likely, as opposed to speculative, that the injury will be reduced by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). If any element is missing, the plaintiff lacks standing to maintain the claim in federal court. *Okpalobi v. Foster*, 244 F.3d 405, 425 (5th Cir. 2001). Additionally, where, as here, a plaintiff seeks prospective declaratory or injunctive relief, it is insufficient to show that it suffered harm from unlawful conduct in the past. To satisfy the case-or-controversy requirement for prospective injunctive and declaratory relief, the plaintiff must show either "continuing harm or a real and immediate threat of repeated injury in the future." *See Grant ex rel. Family Eldercare v. Gilbert*, 324 F.3d 383, 388 (5th Cir. 2003). Motions

to dismiss for lack of standing are considered under Rule 12(b)(1). *Harold H. Huggins Realty v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011).

The party asserting jurisdiction bears the burden to prove that the court has jurisdiction to determine the issues presented. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In determining a motion to dismiss for lack of subject-matter jurisdiction, the court may consider (1) the complaint alone, presuming the allegations to be true; (2) the complaint supplemented by undisputed facts; (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts. *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009). Unlike a motion to dismiss for failure to state a claim, the district court is empowered to consider matters outside the complaint and matters of fact that may be in dispute. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). When examining a factual challenge to subject-matter jurisdiction that does not implicate the merits of plaintiff's claims, the district court has substantial authority to weigh the evidence and satisfy itself as to the existence of its power to hear the case. *See Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986).

The Agency contends that Plaintiffs lack standing because they are unable to show that even if Plaintiffs prevail on their claims, the Agency does not have the ability to redress the claims. Specifically, the Agency argues that the Plaintiffs' injunctive-relief request seeks relief beyond the Agency's statutory authority. The Agency contends that there is no statutory provision authorizing the Agency to mandate that a school or course provider take any particular affirmative action in how they teach the Agency's minimum curriculum. Further, the Agency contends that absent any statutory authority that the Agency mandate particular actions for a school or course provider, such as securing an interpreter or utilizing other learning aids for hearing impaired individuals to use in

the driver education courses licensed by the Agency, the Plaintiffs' request for an injunction cannot be met. The Agency's position rests on their assertion that Texas law requires that it is the private driver-education schools or course providers who must comply with the federal law.

Plaintiffs respond that it is the Agency's refusal to enact regulations requiring privately operated driver-education schools to include accommodations for hearing impaired individuals who are taking the Agency-licensed driver education courses which has prevented her from acquiring the Agency course-completion certificate. Plaintiffs request that the court order the Agency to adopt and enforce rules that require driving schools to accommodate hearing-impaired individuals through qualified interpreters or other means of assistance.

Plaintiffs assert that the Agency has the statutory authority to "adopt and enforce rules necessary" to administer the driver-education program. *See id.* at § 1001.053(3). Plaintiffs also argue that it is this authority–the Agency's power to adopt and enforce rules–that requires the Agency to ensure that the schools provide disability accommodations. Plaintiffs contend that the Agency may develop appropriate course materials, media, and other auxiliary aids, adapting requirements for instructors and coordinate with other state agencies to ensure suitable accommodation in the provision of driver education. Plaintiffs respond that their request for relief does not necessarily include a request for a sign-language interpreter. "While a sign language interpreter would be one way to accommodate Plaintiffs and potentially cure their injuries, that is not the remedy Plaintiffs seek directly from the [Agency]." Further Plaintiffs argue that compliance with Section 504 and the ADA,

> not the exact means of achieving it (e.g., through an interpreter or otherwise), is what Plaintiffs seek here. Requiring driver-education schools to comply with the ADA and imposing sanctions for non-

compliance is *necessary* to fulfill [the Agency's] responsibility for its driver-education program.

Further, Plaintiffs are not demanding an order directing the Agency to as the Agency phrases it, "to exercise its enforcement authority in a particular manner." Rather, Plaintiffs seek a declaration that the Agency has an affirmative duty to provide them with equal access to the driver-education program. The exact means of compliance, Plaintiffs contend, are up to the Agency.

Issue is joined regarding a solely legislative act–how Texas licenses drivers between the ages of 18 and 25. This is not a case about public academic education. Under the statutory scheme, a private driving school may only be licensed if it is in compliance with "all county, municipal, state, and federal laws." *Id.* at §§ 1001.205(5). Based on the statutory scheme, compliance with federal law, including the ADA and Section 504, lies with the driving schools or the course providers in how they deliver the Agency's driver's-education curriculum. The court has no disagreement with this proposition.

Under Title II, however, it is the Agency that must comply with federal law. Based on the statutory scheme, the Agency can adopt and enforce disability-discrimination-compliance regulations so that hearing-impaired individuals have access to the required Agency's driver-education programs and ultimately the Agency's course-completion certificates. *See id.* at §§ 1001.053(a)(3), .051, .206(7). Access to the course-completion certificates, although related to delivery of the Agency's driver-education curriculum, is different from access to the required Agency curriculum that is delivered by private driver's education schools or course providers. The court doubts that the Agency may avoid the reach of the ADA's regulations by farming out the state statutory or regulatory approval to a licensed entity that is not in compliance or need not comply with the ADA. The court

does not reach this question on motion to dismiss. The court holds that Plaintiffs have shown that a favorable decision on their claim against the Agency can redress their alleged injuries and that Plaintiffs have standing to pursue their claims.

**Request to dismiss Plaintiffs' claims based on sovereign immunity**

The Agency also contends that it has Eleventh Amendment immunity from Plaintiffs' claims because the Agency does not enforce the requirement that individuals under 25 years of age must complete a driver education course to obtain their first driver's license. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The core function of the Amendment is to bar the authority of federal courts to litigate suits brought by citizens against the states. *See Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 276 (5th Cir. 2005) (en banc). Although by its express terms, the Amendment "bar[s] only federal jurisdiction over suits brought against one State by citizens of another State or foreign state," the Supreme Court has long held that it also precludes jurisdiction where, as here, a citizen brings suit against her own state in federal court. *See Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997).[2]

There are two exceptions to the rule of sovereign immunity. A state may waive its immunity by consenting to suit or Congress may abrogate state sovereign immunity pursuant to the enforcement power conferred by section 5 of the Fourteenth Amendment. *See, e.g., College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999).

---

[2] The Eleventh Amendment protects "state agents, and state instrumentalities" as well as the states themselves. *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997).

The ADA specifically provides that "[a] State shall not be immune" from suits under the act because of sovereign immunity." 42 U.S.C. § 12202. This is a valid abrogation of sovereign immunity as applicable to Title II ADA claims and is a valid exercise of congressional power to the extent that it "applies to the class of cases implicating the fundamental right of access to court" and "insofar as Title II creates a private right of action for damages against the States for conduct that actually violates the Fourteenth Amendment." *See United States v. Georgia*, 546 U.S. 151, 159 (2006).

Plaintiffs contend that the Agency's sovereign-immunity argument is moot, because the Agency waived sovereign immunity under Section 504. Particularly, Plaintiffs argue that Section 504 prohibits discrimination against qualified individuals with disabilities by recipients of federal financial assistance. States and public entities receiving federal financial assistance specifically waive their Eleventh Amendment immunity from claims under Section 504. *See* 42 U.S.C. § 2000d-7. A state, or its agency, accepting federal funds knowingly consents to be sued under Section 504. *See Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448, 453 (5th Cir. 2005) (state entity's "receipt of federal education funds constituted a knowing and voluntary waiver of sovereign immunity as to claims under § 504"); *see also Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 282 (5th Cir. 2005). Further, when a plaintiff's ADA claim is identical to their Section 504 claim, it is unnecessary to decide whether the defendant is entitled to immunity from the ADA. *See Bennett-Nelson*, 431 F.3d at 454-55.

Plaintiffs' rights urged and the remedies they seek under Section 504 and Title II are the same. As did the plaintiffs in *Bennett-Nelson*, here Plaintiffs' alleged failure-to-accommodate claims under both Section 504 and Title II of the ADA are identical in scope. *Id.* at 450, 455. As the

Agency has waived its immunity under Section 504, it is not immune from a similar claim under the ADA.

**Request to dismiss Plaintiffs' claims for failure to state a claim for which relief may be granted**

The Agency contends that Plaintiffs have failed to state a valid claim for relief as Plaintiffs have failed to show that the Agency's authority over driver education, including its activities in developing program requirements, curriculum, instructor programs, licensing, supervising and regulating driver-education courses, and issuing course-completion certificates does not amount to "services, programs, or activities" of the Agency for purposes of the ADA or Section 504. The Agency argues that it does not operate its own "driver-education program" but is only a licensor of privately run driver-education schools. Further, the Agency argues that driver-education courses in Texas are administered as programs and activities of the Agency's licensees, not the Agency itself. The Agency also argues that its establishment of minimum course standards, curriculum standards, and licensing standards for driver education schools and course providers does not constitute anything more than the establishment of criteria by which the Agency determines whether a school or course provider should be licensed.

Plaintiffs respond that the Agency's program is not solely a licensing operation but is an educational program in and of itself, which by state law the Agency marshals and regulates. Specifically, Plaintiffs note that it is the Agency that designs the driver-education program's minimum requirements and curriculum, develops a program of study for instructors, certifies the schools and instructors who make the Agency's curriculum available to the public, determines whether enforcement actions should be taken against a driving school, executes any enforcement

action, and ultimately issues the course-completion certificates required to be obtained before an individual's first Texas driver's license may be issued if that individual is under the age of 25.[3]

The Agency's services, programs, and activities are to be considered separately under Title II of the ADA, from any licensee driver-education school's programs and activities, which are considered under Title III of the ADA. *See* 42 U.S.C. § 12132. Under Section 504, a program or activity includes, "all of the operations of a . . . department, agency, special purpose district, or other instrumentality of a State or of a local government." 29 U.S.C. § 794(b). Unlike most self-directed private businesses, driver-education schools rely on the Agency for instructions on the content of their ultimate product, and the Agency develops those requirements based on its legislative mandate. Activities related to the establishment and operation of the driver-education program and supervising individual schools are part of the Agency's daily operations, and thus qualify them as a program, service, or activity for which the Agency is responsible under both Section 504 and Title II.

A "motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). Although a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). The plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of

---

[3] As an answer has been filed in this action, the Agency's motion to dismiss for failure to state a claim may also be considered as a motion for judgment on the pleadings. *See* Fed. R. Civ. P. 12(c) ("Rule 12(c)"). However, whether the motion is deemed a Rule 12(c) or a Rule 12(b)(6) motion is immaterial because the court applies the same process in evaluating either motion.

a cause of action will not do." *Id.* The Supreme Court expounded on the *Twombly* standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In evaluating a motion to dismiss, the court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2009).

In deciding a Rule 12(b)(6) motion to dismiss, a court may consider not only the allegations made in the plaintiff's complaint, but also any documents attached to or incorporated with the pleadings and all matters of which judicial notice may be taken. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir.2000); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996). In addition, a court may permissibly refer to matters of public record. *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Collins*, 224 F.3d at 498–99 (citing *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

The court holds that Plaintiffs have stated sufficient facts that, when construed in their favor, allows the court to infer that the driver-education program administered by the Agency is a "service, program, or activity of a public entity" under Title II of the ADA and Section 504. Regarding driver education, the Agency is performing its core function, developing educational requirements that its licensees must meet before offering the course to the public. Further, the Agency is vested with

monitoring the driver-education schools for enforcement actions and ultimately issues completion-certificates for those who successfully complete a driver-education course. Plaintiffs have shown sufficient facts that the Agency's role goes beyond only licensing driver-education schools. The Agency's motion to dismiss for failure to state a claim, therefore, will be denied.

**Request for certification of discretionary interlocutory appeal**

As the motion to dismiss will be denied, the court addresses the Agency's request that the court certify the order for discretionary interlocutory appeal to the Fifth Circuit. *See* 12 U.S.C. § 1292(b). The Agency argues that "the question of whether a Texas state agency's licensing of private entities subject that state agency to liability under the ADA for the activities of the private licensee is a controlling question in this matter that–if resolved by the Fifth Circuit on interlocutory appeal–would materially advance the resolution of this litigation as it is the central legal question over which the parties have substantial disagreement."

Plaintiffs oppose the Agency's request–"As currently worded, [the Agency]'s request for interlocutory appeal should be denied because the proposed question will not resolve this litigation."

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* that application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

12 U.S.C. § 1292(b).

Having considered the Agency's request and Plaintiffs' opposition, the court concludes that the issues addressed by this order denying the Agency's motion to dismiss (1) involves controlling questions of law (2) as to which there is substantial ground for difference of opinion and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. *Id.* The court declines, however, to frame the controlling question of law in this action as suggested by the Agency, as it inadequately sets forth the question of law about which there is substantial ground for a difference of opinion.

The key question in this action is not the Agency's liability for the actions of its licensees, but the Agency's liability for the driver-education program it created, and whether the Agency's extensive and continuous involvement in the administration of the driver-education program makes it a "service, program, or activity" of the Agency, which is within the scope of Title II of the ADA and Section 504.

The court orders that the instant order be certified for an immediate appeal to the Fifth Circuit. *Id.* Further, the court will stay all matters in this cause until the Circuit resolves the interlocutory appeal on the merits or declines to accept it. *Id.*

**IT IS ORDERED** that the Fourth Amended Motion to Dismiss filed October 7, 2013 (Clerk's Document No. 78) is **DENIED**.

**IT IS FURTHER ORDERED** that this Order is **CERTIFIED FOR DISCRETIONARY INTERLOCUTORY APPEAL** to the Fifth Circuit. *See* 12 U.S.C. § 1292(b).

**IT IS FURTHER ORDERED** that all proceedings are **STAYED** in this action pending further order of the court.

SIGNED this **17th** day of December, 2013.

_____
LEE YEAKEL
UNITED STATES DISTRICT JUDGE